372 A.2d 687
**COMMONWEALTH of Pennsylvania**
v.
**Kim Lee HUBBARD, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 21, 1975.

Decided Jan. 28, 1977.

Reargument Denied May 16, 1977.

260

262

264

Peter T. Campana, Williamsport, for appellant.

Allen E. Ertel, Dist. Atty., Williamsport, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

On October 19, 1973, Jennifer Hill of South Williamsport, Pennsylvania, twelve years of age, failed to return

home after an overnight stay with a girl friend, Ruth Hubbard. Ten days later her body was discovered in a cornfield several miles from the Hubbard home. An autopsy disclosed that death had been caused by manual strangulation and had occurred on October 19. Kim Lee Hubbard, the twenty year old brother of Ruth Hubbard was indicted and tried for the murder. A jury found him guilty of murder in the second degree. This direct appeal followed.[1]

## I.

Appellant first contends that the evidence adduced at trial was not sufficient to support his conviction. Appellant argues that the circumstantial case presented against him (1) does not disprove his alibi defense; and (2) does not sufficiently exclude the possibility that other persons could have committed the crime. While the questions are close ones, we must reject appellant's contentions.

This Court has often recognized that circumstantial evidence may be sufficient to support a conviction. See, e. g., *Commonwealth v. Cox*, 466 Pa. 582, 353 A.2d 844 (1975); *Commonwealth v. Massart*, 469 Pa. 572, 366 A. 2d 1229 (1975); *Commonwealth v. Dawson*, 464 Pa. 254, 346 A.2d 545 (1975); *Commonwealth v. Petrisko*, 442 Pa. 575, 275 A.2d 46 (1971); *Commonwealth v. Kravitz*, 400 Pa. 198, 161 A.2d 861 (1960). "The test of sufficiency of evidence is whether, accepting as true all the evidence, together with all reasonable inferences therefrom, upon which the jury could properly have based its verdict, such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt." *Commonwealth v. Clark*, 454 Pa. 329, 331, 311 A.2d 910, 911

1. Jurisdiction is to be found in the Act of July 31, 1970, P.L. 673, 17 P.S. § 211.202(1).

(1973). When viewed in this light the evidence introduced at trial may be summarized as follows:

At approximately 4:00 in the afternoon of October 19, Jennifer Hill left the Hubbard residence to return home from her overnight stay. She was next seen at 4:30 p. m. walking in front of the home of a neighbor of the Hubbards. At that time a metallic-green colored automobile was seen to approach Jennifer from behind. On the ledge behind the rear seat was a white construction helmet. The driver of the car stopped his car and gestured to Jennifer. In apparent recognition of the driver, Jennifer ran to the car, hopped in the front seat and was driven off. This was the last time she was seen alive.

Ten days later, on October 29, a member of the Civil Air Patrol Squadron discovered Jennifer's body lying in a cornfield five feet off of a short dirt road which connects the field to Sylvan Dell Road. Time of death was fixed at between 4:30 and 8:00 p. m. on October 19.[2] When discovered, Jennifer's body was only partially clad. Her clothing was not torn, however, and the autopsy revealed no evidence of rape or sexual attack. No signs of a struggle were found in the area in which the body was discovered. A search of the location did, however, yield two significant pieces of evidence: a clear boot-heel mark under the buttocks of the victim, and two tire-marks embedded in a mound of clay near the intersection of the dirt road and Sylvan Dell Road. The clay was not indigenous to the soil of the area, but had been deposited on the dirt lane by a bulldozer operator who had removed the substance from the cleats of his tires while working in the field at approximately noon on October 19. Be-

2. Time of death was fixed through an examination of the contents of Jennifer's stomach. The food particles discovered in her stomach corresponded precisely to those foods which Jennifer had consumed between twelve noon and two p. m. on October 19. An analysis of the extent to which the food had been digested led to the conclusion that death occurred between the hours of 4:30 p. m. and 8:00 p. m. on that date.

cause exposure to the elements would have caused the clay to harden within thirty-six hours, it was concluded that the tire imprints, formed while the clay was yet soft, must have been made between twelve noon on October 19 and six p. m. on October 20.

On October 31, two police officers went to the Hubbard home to question the members of the Hubbard family about the circumstances of Jennifer's visit on October 19 and her disappearance. During the course of the questioning, appellant agreed to allow the police to inspect his automobile and his boots. The automobile was metallic-green and contained a white construction helmet on the ledge behind the rear seat. Imprints taken of the tires of the car and of the heels of the boots matched those imprints found in the cornfield. At trial, appellant admitted that no one other than he had used his boots or his automobile. Appellant steadfastly denied, however, ever having been in the cornfield in which the body was found.

At trial, appellant relied upon an alibi defense, namely, that he was at his home between 4:30 and 5:00 p. m. on October 19 and could not, therefore, have been the individual who beckoned Jennifer Hill into the automobile. To support this theory appellant relied primarily on the testimony of two witnesses—his girl friend, Colleen Whitenight, and the victim's father, Jack Hill. Miss Whitenight testified that she had telephoned the Hubbard home at 4:30 p. m. on October 19 and conversed with appellant for approximately five minutes. Her testimony was flatly contradicted, however, by that of her father. Mr. Whitenight testified that he was with his daughter at the time she claims to have made the phone call and that he was certain that no such phone call had been made. The jury obviously chose to believe the testimony of Mr. Whitenight.

Jack Hill testified that appellant answered the phone when he telephoned the Hubbard home at 5:00 p. m. to

inquire about Jennifer's whereabouts. This testimony places appellant at his home thirty minutes after Jennifer was observed driving away in the metallic-green automobile. Appellant established at trial that it would take fifteen minutes for an automobile travelling at a speed of thirty-five miles an hour to drive from the point where Jennifer was seen boarding the car to the cornfield where her body was found, and then back to the Hubbard residence. It was further established that it takes between three to four minutes to cause a death by manual strangulation. Given these facts, plus the additional considerations that some time would have been required to go from the car to the place in the field where the body was found and that some moments must be allotted to the disrobing of the victim, appellant contends that it would have been physically impossible for him to have strangled Jennifer Hill, deposited her body in the cornfield and returned home by 5:00 p. m., in time to receive Mr. Hill's call. Appellant argues, therefore, that the Commonwealth's case, if anything, tends to corroborate his alibi.

Appellant's contention must, however, be rejected. The Commonwealth's theory of the case is not at all dependent upon proving that appellant killed Jennifer Hill in that cornfield, or, indeed, that he there concealed her body sometime between 4:30 and 5:00 p. m. on October 19. Rather, the Commonwealth's evidence tended to prove that the victim was strangled by appellant between 4:30 and 5:00 p. m. on October 19 and that her body was *subsequently* deposited in the cornfield sometime before six p. m. on *October 20.* We are satisfied that the evidence adduced at trial was sufficient to support this theory. When the evidence is so construed it cannot be said that the Commonwealth's evidence tended to verify appellant's alibi.

So too, must we reject appellant's contention that the evidence does not sufficiently link Hubbard to the murder to exclude the possibility that other persons could

have committed the crime. In support of this proposition appellant relies on our decision in *Commonwealth v. Woong Knee New*, 354 Pa. 188, 47 A.2d 450 (1946). In *Woong Knee*, the conviction was based entirely on evidence which placed defendant with the victim at the victim's home shortly before the victim was there murdered. There was, however, no evidence which tended to prove that the defendant had committed the crime or which cast doubt on the equally likely possibility that an unknown assailant had killed the victim after the defendant had left his company. In reversing the conviction we noted that:

> "When two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances, a jury must not be permitted to guess which inference it will adopt, especially when one of the two guesses may result in depriving a defendant of his life or his liberty." *Commonwealth v. Woong Knee New*, 354 Pa. 188, 221, 47 A.2d 450, 468 (1946).

See also *Commonwealth v. Crews*, 436 Pa. 346, 260 A.2d 771 (1970).

This case is not *Woong Knee*. The cornfield in which the body was found was not necessarily the scene of the murder. Rather, the evidence tended to show that the victim's body was deposited there *after* the strangulation occurred. Thus the murderer would likely be a person whose presence in the cornfield at some relevant time could be established. Despite repeated denials, Hubbard was placed in that cornfield, at the very point where the body was found. The finding of a clear print of his boot-heel underneath the victim's body would indicate that Hubbard had stood on that spot shortly before the body was deposited. That the victim was last seen alive boarding an automobile which matched the description of a car owned by appellant, at the beckoning of a man with whom the victim was apparently familiar, permits an inference that Hubbard was the driver of that vehicle.

Tire marks from this vehicle were found in the cornfield and were made at the relevant time. We cannot say that the jury acted unreasonably in concluding that this combination of circumstances proved defendant's guilt beyond a reasonable doubt. As this Court has recently said in reviewing a similar sufficiency challenge to a circumstantial case:

> "While none of the foregoing facts taken singly would be sufficient to establish [appellant's] guilt, the totality thereof and the reasonable inferences arising therefrom were legally sufficient to render [appellant's] guilt an issue for the jury." *Commonwealth v. Dawson*, 464 Pa. 254, 257, 346 A.2d 545, 547 (1975).

Thus appellant's sufficiency challenge must be rejected.

## II.

Following a period of questioning at his home on October 31, appellant consented to a police inspection of his automobile and boots. Imprints of the automobile tires and boot-heels were taken by the police and later introduced into evidence against appellant. During the course of the trial and in response to testimony by the police that appellant had not been advised of his *Miranda* [3] rights during the October 31 questioning, appellant's counsel, for the first time, made an oral motion to suppress all the evidence obtained as a result of this questioning. The trial judge refused to conduct a suppression hearing and denied the motion. This ruling is assigned as error.

Rule 323(b) of our Rules of Criminal Procedure provides that the issue of the admissibility of evidence is waived unless an application to suppress is made to the court ten days prior to trial.[4] Pa.R.Cr.P. 323(b), 19 P.

---

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. Rule 323(b) provides:
 "(b) Unless the opportunity did not previously exist, or the interests of justice otherwise require, such application shall be

S. (1975 Pamphlet). See also *Commonwealth v. Goggans*, 455 Pa. 606, 317 A.2d 222 (1974); *Commonwealth v. Williams*, 454 Pa. 261, 311 A.2d 920 (1973); *Commonwealth v. Sasser*, 453 Pa. 622, 309 A.2d 352 (1973). This rule is subject to only two exceptions: (1) where the opportunity to make an application to suppress did not previously exist, or (2) where "the interests of justice require." Pa.R.Cr.P. 323(b). Where the party seeking to suppress evidence for the first time at trial fails to demonstrate that his untimely application falls within one of these two exceptions, the trial court commits no error in refusing to hear the application. In the instant case appellant alleges that his application to suppress fell within both these exceptions. We do not agree.

■ Prior to the testimony of the police officer at trial, appellant states, his counsel was unaware that appellant had not been warned of his constitutional rights before submitting to questions on October 31. As a consequence, he argues, "the opportunity did not previously exist" for the application to suppress. In support of this argument he relies on *Commonwealth v. Williams*, 229 Pa.Super. 390, 323 A.2d 862 (1974). This reliance is misplaced.

In *Williams*, appellant was charged with driving under the influence of alcohol. Tests were made of appellant's blood while he was being treated for injuries sustained in an accident which gave rise to the arrest. Neither appellant nor his lawyer was aware that these tests had been conducted, and, as a consequence, no pre-trial application was made to suppress the results. When the Com-

made only after a case has been returned to court and not later than ten days before the beginning of the trial session in which the case is listed for trial, except that in any judicial district having continuous trial sessions said application shall be filed not later than ten days before the day the case is listed for trial. If timely application is not made hereunder, the issue of the admissibility of such evidence shall be deemed to be waived."

monwealth sought to introduce the results, appellant's counsel, for the first time, moved to suppress. The trial court refused to hear the motion. On appeal the Superior Court reversed, holding that where counsel could not reasonably have been expected to have discovered the existence of evidence prior to its introduction at trial, the opportunity to file a pre-trial written motion could not be said to have previously existed. As a consequence, the court concluded that the oral motion should have been heard at trial.

In the instant case, in contrast, appellant's counsel was well aware of the fact that his client had been questioned by the police on October 31, that Hubbard had, at that time, turned over to the police his boots and automobile, and that imprints of the tires and boot-heels had been made. Unlike the *Williams* case, trial counsel knew of the existence of the evidence and had ample opportunity to determine whether a motion to suppress was warranted. Accordingly, we conclude that appellant's application did not fall within the first exception to rule 323(b).

Likewise it cannot be said that "the interests of justice" required that the motion be heard. The "interests of justice" exception to rule 323(b) was borrowed from its predecessor, Pa.R.Cr.P. 2001(b), and is designed to grant a trial judge the discretion to excuse a failure to file a pretrial motion. *Commonwealth v. Pinno*, 433 Pa. 1, 248 A.2d 26 (1968). It has been said that such discretion should be exercised where "the merits of counsel's oral motion were so apparent that justice required that it be heard." *Commonwealth v. Williams*, 229 Pa.Super. 390, 399, 323 A.2d 862, 866 (1974). Appellant here argues that this is such a case; that is, that the failure to advise him of his *Miranda* rights rendered his consent to the police inspection involuntary *per se*, and that, as a consequence, the soundness of the oral motion should have been apparent to the trial judge. We do not agree.

In our view, the issue of what the prosecution must prove to demonstrate that a consent to a search was voluntarily given is controlled by the decision of the Supreme Court of the United States in *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In that case a police officer, who had stopped an automobile because one of its headlights was out, asked one of the passengers of the car if he could search the vehicle. The passenger, who had told the police he was in lawful possession of the car, consented to the search. Stolen checks were uncovered and the passenger was convicted of possessing a stolen check with the intent to defraud. Prior to trial, the trial court denied a motion to suppress this evidence based on the argument that the State should be required to establish a knowing and intelligent waiver of the right to refuse a search before a consent to a search will be deemed valid. On appeal from a denial of habeas corpus relief, the Court of Appeals for the Ninth Circuit reversed the conviction, concluding that proof of knowledge of a right to refuse consent *is* a necessary prerequisite to demonstrating a "voluntary" consent. On appeal the Supreme Court rejected the argument that the strict "knowing and intelligent" waiver requirements of *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), extend to the constitutional guarantee against unreasonable search and seizure. 412 U.S. at 240, 93 S.Ct. at 2054, 36 L.Ed. at 870. The Court similarly rejected the notion that "the Court's decision in the *Miranda* case requires the conclusion that knowledge of a right to refuse is an indispensable element of a valid consent." 412 U.S. at 246, 93 S.Ct. at 2058, 36 L.Ed.2d at 874. Instead the Court concluded that:

"when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact

voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854, 875 (1973).

Noting that the subject of the search was not in custody, that there was no evidence of any inherently coercive tactics, and that the atmosphere surrounding the elicitation of the consent was congenial, the Court reversed the judgment of the Ninth Circuit.

 The record in this case discloses no evidence that Hubbard was in custody at the time he consented to the inspection of his property.[5] The request by the police to inspect the boots and automobile was made only after a short, informal questioning period in Hubbard's own home, and it was the uncontradicted testimony of the investigating officers that they had twice advised Hubbard that he had a right to refuse to consent to the requested inspection. Under these circumstances we cannot conclude that appellant's motion to suppress

5. Both police officers who questioned Hubbard at his home on October 31, testified that the visit to the Hubbard home was part of a routine investigation of the murder, and that they questioned the family only because they were the last people known to have spoken to Jennifer Hill before her death. The questioning was informal in nature and short in duration. Hubbard himself testified that he felt free to terminate the questioning at any time. Thus at the time that appellant gave his consent, he was neither the "object of an investigation of which he was the focus," nor "deprived of his freedom in any significant way." In short, he was not "in custody" at the time he consented to the inspection. See, *e. g., Commonwealth v. Powell*, 459 Pa. 253, 328 A.2d 507 (1974); *Commonwealth v. O'Shea*, 456 Pa. 288, 318 A.2d 713 (1974), *cert. denied*, 419 U.S. 1092, 95 S.Ct. 686, 42 L.Ed.2d 685 (1974); *Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242 (1974); *Commonwealth v. D'Nicuola*, 448 Pa. 54, 292 A.2d 333 (1972).

raised an "apparently meritorious claim." See *Commonwealth v. Williams, supra,* 229 Pa.Super. at 399, 323 A.2d 862. Accordingly, we hold that the trial judge did not abuse his discretion in refusing to hear appellant's motion to suppress. See *Commonwealth v. Pearson,* 450 Pa. 467, 303 A.2d 481 (1973); cf. *Commonwealth v. Brown,* 462 Pa. 578, 342 A.2d 84, 88 (1975).

## III.

Appellant was represented at trial by privately retained counsel [hereinafter "trial counsel"] who withdrew from the case after he had filed post-trial motions. He was succeeded by a public defender [hereinafter "post-trial counsel"], who filed a supplemental motion for a new trial and represented appellant throughout the post-trial proceedings at the trial court level. On appeal, appellant has been represented by still a third lawyer (another public defender) [hereinafter "appellate counsel"]. He raises various questions of ineffectiveness of both trial and post-trial counsel.

As to the performance of trial counsel, it is now claimed to have been ineffective in that he: (1) failed to file a pre-trial motion to suppress the evidence obtained as a result of the police inspection of appellant's automobile and boots; (2) failed to object to the admission into evidence of certain black and white photographs depicting the victim's body as it was discovered in the cornfield; and (3) failed to object to certain allegedly prejudicial remarks made by the district attorney during his summation. None of these contentions, however, was raised by appellant's post-trial counsel in his post-trial motions. As a consequence, the issue of trial counsel's ineffectiveness has not been properly preserved for appellate review.[6]

6. We have recently held that newly appointed or retained counsel must raise on appeal the ineffectiveness of his predecessor trial counsel or that claim will be deemed waived. *Commonwealth v.*

■ With respect to post-trial counsel, appellant now contends that his representation also was ineffective because the supplemental post-trial motions he filed did not assign as error (1) the admission into evidence of two color slides; (2) the ineffectiveness of trial counsel.[7]

■ In resolving this contention we are guided by the standard set forth in *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604, 235 A.2d 349, 352 (1967):

> "[C]ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests."

The initial factor which must be considered in applying this reasonable basis standard is whether the claim which post-trial counsel is charged with not pursuing had some reasonable basis. In *Maroney* we noted that "a finding of ineffectiveness could never be made unless we concluded that the alternatives not chosen offered a po-

*Smallwood,* 465 Pa. 392, 350 A.2d 822 (1976); *Commonwealth v. Carter,* 463 Pa. 310, 344 A.2d 846 (1975); *Commonwealth v. Strachan,* 460 Pa. 407, 333 A.2d 790 (1975); *Commonwealth v. Twiggs,* 460 Pa. 105, 331 A.2d 440 (1975); *Commonwealth v. Dancer,* 460 Pa. 95, 331 A.2d 435 (1975). The rule that emerges from these cases is that ineffectiveness of prior counsel must be raised as an issue at the earliest stage in the proceedings at which the counsel whose effectiveness is being challenged no longer represents the defendant. It follows then that when newly appointed post-trial counsel fails to assign the ineffectiveness of trial counsel as a ground for post-trial relief, the issue of trial counsel's ineffectiveness is not properly preserved for appellate review. As we have recently said in another context:

> "[P]ost-verdict motions promote judicial economy and the orderly administration of the appellate process. It is for these reasons that, as a rule, issues not raised by way of post-verdict motions in the trial court will not be considered on appeal." *Commonwealth v. Carter,* 463 Pa. 310, 313, 344 A.2d 846, 848 (1975).

7. As this appeal is the first stage of the proceedings at which post-trial counsel is no longer representing appellant, allegations of his ineffectiveness are properly raised in this direct appeal. See discussion *supra,* note 6.

tential for success substantially greater than the tactics actually utilized." *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. at 605 n. 8, 235 A.2d at 353. Because counsel does not forego an alternative which offers a substantially greater potential for success when he fails to assert a baseless claim, counsel cannot be found to have been ineffective for failing to make such an assertion. See, *e. g., Commonwealth v. Nole,* 461 Pa. 314, 336 A.2d 302 (1975); *Commonwealth v. Harrison,* 228 Pa. Super. 42, 323 A.2d 848 (1974); cf. *Commonwealth v. Goosby,* 461 Pa. 229, 336 A.2d 260 (1975); *Commonwealth v. Rice,* 456 Pa. 90, 318 A.2d 705 (1974). It is only when the claim which was foregone was of arguable merit that we must make an inquiry into the basis for the post-trial counsel's decision not to pursue the matter. Thus the starting point of our inquiry is whether there were reasonable grounds upon which to advance the two claims which were not advanced in the motion for a new trial.

We emphasize that our analysis of the abandoned claim is undertaken solely for the purpose of resolving questions of ineffective representation. Not having been raised in post-trial motions, the claim itself has not been properly preserved for appellate review. See, *e. g., Commonwealth v. Carter,* 463 Pa. 310, 344 A.2d 846 (1975). Rather, once we conclude that the omitted contention is of arguable merit, our inquiry into the substance of the claim ceases and shifts to an analysis of post-trial counsel's basis for decision. If it cannot be determined from the record whether a satisfactory basis for the omission exists then a remand for an evidentiary hearing on that question is proper. See, *e. g., Commonwealth v. Moore,* 466 Pa. 510, 353 A.2d 808 (1976); *Commonwealth v. Twiggs,* 460 Pa. 105, 331 A.2d 440 (1975). If, on the other hand, we can determine from the record that counsel was ineffective then the appropriate remedy would be to grant appellant the right to

file post-trial motions nunc pro tunc. We do not decide the issue which counsel was ineffective in failing to preserve.[8] With this caveat in mind we turn now to appellant's allegations.

(1) The trial judge admitted into evidence over defense objection two color slides of the body of the victim. One slide was a frontal view of the victim's shoul-

8. It is well-settled that, as a rule, issues not raised by way of post-trial motions will not be considered on appeal. See, e. g., Commonwealth v. Carter, 463 Pa. 310, 344 A.2d 846 (1975); Commonwealth v. Gonzales, 463 Pa. 597, 345 A.2d 691 (1975); Commonwealth v. Spriggs, 463 Pa. 375, 344 A.2d 880 (1975); Commonwealth v. Bronaugh, 459 Pa. 634, 331 A.2d 171 (1975). Appellant contends, however, that if we conclude from the record that post-trial counsel was ineffective, we should then proceed to reach the merits of the waived issues. To support this contention appellant relies on a recent decision of the Superior Court which held:

"Therefore in order to consider the appellant's claim of ineffective assistance of counsel, we must look to the issues not raised in post-verdict motions to determine if they have merit. It should be noted that these are the very same issues which in the first paragraph of this opinion we said we would not consider on direct appeal. A lesson can be learned from this which could be useful to appellants who have failed to raise an issue in post-verdict motions. All such appellant need do in order to have such substantive issue considered by this court is simply raise the issue of ineffective assistance of counsel. The reason for such ineffectiveness of counsel would be the failure to raise the substantive issue in post-verdict motions. If the issue had merit and it could be determined from the record that trial counsel had no reasonable basis for this failure to raise such issue in post-verdict motions, counsel would be deemed ineffective and the issue would be considered on appeal, just as if it were raised in post-verdict motions." Commonwealth v. Learn, 233 Pa.Super. 288, 335 A.2d 417 (1975). (emphasis added).

The italicized portions of the Superior Court opinion are clearly in error. Attacks on ineffectiveness of counsel may not be properly used as a vehicle to circumvent the consequences of failing to preserve issues for appeal. If a finding of ineffectiveness of post-trial counsel is made, the appropriate remedy is to remand the case to the trial court to allow appellant to file post-trial motions nunc pro tunc. It is not, as the Superior Court suggests, to reach the merits of the claim which has not been preserved. So to conclude would be to resurrect the discarded doctrine of "basic and fundamental error" under the rubric of ineffective assistance of counsel. Compare Commonwealth v. Clair, 458 Pa. 418, 326 A.2d 272 (1974).

ders and head; the other was a rear view of the same area of the body. The slides were introduced to illustrate the testimony of the medical examiner that death was caused by manual strangulation. The ruling was not advanced in support of the motion for a new trial.[9] Having examined the slides in question, we conclude that there was no reasonable basis upon which to attack the trial judge's ruling that they were admissible. It follows then that post-trial counsel was not ineffective in failing to assign the admission of the slides as a ground for post-trial relief.

Photographs and slides of a corpse, *if relevant,* are clearly admissible into evidence if they are not inflammatory and may be admissible in any event.

"Whether or not such photograph is admissible depends, as we have recently restated in *Petrakovitch* [*Commonwealth v. Petrakovitch,* 459 Pa. 511, 329 A. 2d 844, 847 (1974)], *supra,* on a two-stepped analysis. First, the trial court must decide whether the photograph possesses inflammatory characteristics. If the Court finds that it does not, the picture is admissible as is any evidentiary item, subject, of course, to the qualification of relevance. If, but only if, the photograph is deemed to be inflammatory, the Court must then apply the balancing test set forth in the majority opinion, i. e., is the photograph of 'such essential evidentiary value that [its] need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.' " *Commonwealth v. Hilton,* 461 Pa. 93 at 99, 334 A.2d 648 at 652 (1975) (concurring opinion of Pomeroy, J., joined by Jones, C. J. and Eagen, O'Brien, and Nix, JJ.) (footnote omitted).

The fact that pictures depict the corpse of a victim does not render them inflammatory per se. *Common-*

9. Because the issue was not raised by way of post-trial motions it has not been properly preserved for our review. See cases cited note 8 *supra.*

*wealth v. Petrakovich,* 459 Pa. 511, 329 A.2d 844 (1974). Rather the depiction must be of such a gruesome nature or be cast in such an unfair light that it would tend to cloud an objective assessment of the guilt or innocence of the defendant. The position of the body, whether it is nude or wholly or partially covered, whether the facial features are contorted, whether blood is present in profusion and similar factors are to be considered.

The two slides in the instant case were a clinical depiction of the strangulation marks on the victim's neck and of the petechiae [10] around the victim's face. There was no evidence of blood and the facial features were not contorted. In short, an attempt to obtain a new trial on the ground of error in the introduction of these photographs would have proved fruitless. There is thus no basis for us now to say that post-trial counsel was ineffective in not making the vain effort.

(2) Appellant's other assertion of the ineffectiveness of post-trial counsel is that he did not include the ineffectiveness of *trial* counsel as a ground for post-trial relief. Once again, the threshold question is whether the allegations of trial counsel's ineffectiveness would have been frivolous. If so, we need engage no further in exploration of the basis of post-trial counsel's omission. We turn, then, to the three allegations of ineffective assistance of trial counsel which appellant now presents on this appeal.

(a) Trial counsel did not object to the introduction of certain black and white photographs depicting the corpse of the victim as it was discovered in the cornfield. We have inspected the photographs in question and, applying the reasoning set forth earlier in this opinion, have concluded that they would not have been found by the trial court to be inflammatory had they been ob-

10. Petechiae are blood clots that are usually found on the face of a victim in cases of strangulation.

jected to. Thus post-trial counsel reasonably refrained from alleging trial counsel's ineffectiveness on this ground.

(b) Appellant next points to trial counsel's failure to file a pre-trial motion to suppress as something which should have been asserted by post-trial counsel. As discussed earlier, the admissibility of the evidence obtained as a result of the October 31 inspection was not challenged until trial, when a police officer testified that a police request to allow inspection of the appellant's boots and automobile was not preceded by *Miranda* warnings. At this juncture trial counsel stated at side-bar:

> "I was not able to file a motion to suppress because 1 didn't know and was not aware that he was not given his *Miranda* rights until just now and I feel that under the law this man's testimony should be heard on a motion to suppress. . . ."

Appellant contends that this statement constitutes an admission by trial counsel of inadequate pre-trial preparation; had trial counsel made a pre-trial inquiry into whether *Miranda* warnings had been given, then by his own admission he would have filed a pre-trial motion to suppress.

While it is certainly true that "sloth or lack of awareness of the available alternatives" may constitute ineffectiveness, *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440, 443 (1975), sloth is of no consequence if diligent effort would have been unavailing. We have continually rejected claims of ineffective assistance on the ground that counsel failed to make a motion to suppress where it appeared from the record that such a motion would have been fruitless. *Commonwealth v. Goosby*, 461 Pa. 229, 336 A.2d 260 (1975); *Commonwealth v. Russell*, 459 Pa. 1, 326 A.2d 303 (1974); *Commonwealth v. Turner*, 454 Pa. 520, 314 A.2d 496 (1974); *Commonwealth v. Robinson*, 452 Pa. 316, 305 A.2d 354

(1973); *Commonwealth v. Mack*, 451 Pa. 319, 304 A.2d 93 (1973).

■ The thrust of appellant's argument here is that the failure to give *Miranda* warnings prior to the request to inspect appellant's boots and car vitiates the consent which appellant gave for such inspections. For the reasons set forth in part II of this opinion, this argument is without merit. Thus a claim of ineffectiveness on this ground would have been unavailing, and post-trial counsel cannot be faulted for failing to make it.

■ (c) Appellant lastly points to trial counsel's failure to object to certain allegedly prejudicial comments of the district attorney.[11] During the course of his summation the district attorney interjected the following comments about the credibility and guilt of appellant:

"Only two people know where the scratch marks [on Jennifer's neck] came from, Jennifer Hill, who is never going to testify, and the killer. So we will never be able to explain everything in this case, obviously, because one party to the explanation is dead and the other party is not telling the truth." (N.T., summation, 10–11).

"And once you conclude it didn't happen in that cornfield, where did it occur? Only two people know, one of them is Jennifer Hill, she will never tell you, and the killer, and we can't prove where that killing took place, but what we do know is that the Defendant has consistently fabricated in this case. Does he know?" (N.T., summation, 16).

11. Because these remarks were not objected to at trial we may not now consider them on this appeal. See, *e. g., Commonwealth v. Mitchell*, 464 Pa. 117, 346 A.2d 38 (1976); *Commonwealth v. Mennyweather*, 458 Pa. 12, 329 A.2d 493 (1974); *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

"How about some of the other lies? The Defendant said he had never been in that cornfield in his life." (N.T., summation, 21).

"Now, let's talk about a few other things. The Defendant said, 'I lied to get a job.' He said that sort of proud. Would he lie if he murdered? Certainly." (N.T., summation, 22).

"But he made a mistake of the tire prints and the foot markings, and once he started to lie to cover it up, they kept getting bigger and bigger and he kept getting enmeshed in his own lies." (N.T., summation, 27).

This Court has frequently held that it is manifestly improper for a district attorney to express his personal opinion about a defendant's guilt [12] or credibility.[13] At times we have deemed comments of this type to be so prejudicial that a new trial was considered to be the only appropriate remedy. See, e. g., *Commonwealth v. Cronin*, 464 Pa. 138, 346 A.2d 59 (1975); *Commonwealth v. Lark*, 460 Pa. 399, 333 A.2d 786 (1975); *Commonwealth v. Harvell*, 458 Pa. 406, 327 A.2d 27 (1974); *Commonwealth v. Russell*, 456 Pa. 559, 322 A.2d 127 (1974); *Commonwealth v. Revty*, 448 Pa. 512, 295 A.2d 300 (1972); *Commonwealth v. Potter*, 445 Pa. 284, 285 A.2d 492 (1971). In other circumstances we have concluded that the prejudicial impact of the statement was sufficiently remedied by cautionary instructions, or minimized by the context in which the comments were made. See, e. g., *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975); *Commonwealth v. Riley*, 459 Pa. 42,

12. See, e. g., *Commonwealth v. Cronin*, 464 Pa. 138, 346 A.2d 59 (1975); *Commonwealth v. Lark*, 460 Pa. 399, 333 A.2d 786 (1975); *Commonwealth v. Russell*, 456 Pa. 559, 322 A.2d 127 (1974); DR 7-106(C)(4), Code of Professional Responsibility, 438 Pa. xxv (1970).

13. See, e. g., *Commonwealth v. Revty*, 448 Pa. 512, 295 A.2d 300 (1972); *Commonwealth v. Potter*, 445 Pa. 284, 285 A.2d 492 (1971); ABA Standards The Prosecution Function § 5.8(b) (1971).

326 A.2d 400 (1974); *Commonwealth v. Martinolich*, 456 Pa. 136, 318 A.2d 680 (1974); *Commonwealth v. Pierce*, 453 Pa. 319, 309 A.2d 371 (1973).

In the case at bar a substantial question may be raised whether the district attorney engaged in prejudicial prosecutorial misconduct during his summation. Whether the above-quoted comments were in fact improper or whether, if improper, they were sufficiently prejudicial to warrant the grant of a new trial, we are not here called upon to decide. Rather it is sufficient for the purposes of this appeal to conclude that the omitted objection to the comments was arguably important and had a reasonable chance of succeeding.

To say, however, that trial counsel could have raised an arguable objection to the comments is not to conclude that counsel was *per se* ineffective for not so doing. Indeed the failure to object could have been born of a reasonable, calculated trial strategy. It is not inconceivable that defense counsel believed that a mistrial would not be granted and that he did not wish to risk calling additional attention to the comments by way of requested cautionary instructions. Furthermore, even if it be assumed that a mistrial could have been obtained, trial counsel may have thought nonetheless that the presentation of the defense had gone well and that, notwithstanding the comments, the defendant stood a good chance with the jury to whom this presentation had been made. On the other hand, it is certainly possible that the failure to object was the product of "sloth and unawareness." *Commonwealth v. Twiggs, supra.* If such were the case, trial counsel would have been ineffective for not having raised the objection.

Our inability to determine from the record trial counsel's basis for failing to object further complicates our review of post-trial counsel's alleged ineffectiveness for not raising this issue post-trial. If post-trial counsel investigated this aspect of trial counsel's alleged ineffec-

tiveness and reasonably concluded that trial counsel acted in the best interest of appellant, then post-trial counsel could not be said to have been ineffective for failing to raise the issue. If, on the other hand, no such consideration was given to the question by post-trial counsel, then his failure to raise the issue would have been the product of lack of diligence and thus would constitute ineffective assistance. Because we cannot resolve this issue from the record we must remand for an evidentiary hearing to determine whether post-trial counsel was ineffective in failing to assign as grounds for post-trial relief the failure of trial counsel to object to the district attorney's comments on summation. If post-trial counsel is found to have been ineffective, then appellant should be allowed to file post-trial motions nunc pro tunc to raise this allegation of trial counsel's ineffectiveness. If, however, post-trial counsel's representation is found to be effective then the judgment of sentence is to be reinstated.[14]

Judgment of sentence vacated and case remanded for proceedings consistent with this opinion.

JONES, C. J., did not participate in the consideration or decision of this case.

ROBERTS, J., filed a dissenting opinion in which MANDERINO, J., joined.

ROBERTS, Justice, dissenting.

The majority states that even if appellate counsel establishes that post-trial counsel was ineffective because he failed to raise the ineffectiveness of trial counsel, the issue of trial counsel's ineffectiveness is waived. I cannot agree. Where appellate counsel establishes that post-trial counsel was himself ineffective in failing to raise the ineffectiveness of trial counsel, the issue is not

---

**14.** In this eventuality Hubbard would be entitled to appeal again, limited to the effectiveness issue.

waived. Waiver cannot be imposed where a defendant has been denied effective assistance of counsel.

Nor can I agree that an evidentiary hearing is necessary in this case. During closing argument, the district attorney expressed his personal opinion concerning appellant's credibility and guilt:

"Only two people know where the scratch marks [on Jennifer's neck] came from, Jennifer Hill, who is never going to testify, and the killer. So we will never be able to explain everything in this case, obviously, because one party to the explanation is dead and the other party is not telling the truth." (N.T., summation, 10–11).

"And once you conclude it didn't happen in that cornfield, where did it occur? Only two people know, one of them is Jennifer Hill, she will never tell you, and the killer, and we can't prove where that killing took place, but what we do know is that the Defendant has consistently fabricated in this case. Does he know?" (N.T., summation, 16).

"How about some of the other lies? The Defendant said he had never been in that cornfield in his life." (N.T., summation, 21).

"Now, let's talk about a few other things. The Defendant said, 'I lied to get a job.' He said that sort of proud. Would he lie if he murdered? Certainly." (N.T., summation, 22).

"But he made a mistake of the tire prints and the foot markings, and once he started to lie to cover it up, they kept getting bigger and bigger and he kept getting enmeshed in his own lies." (N.T., summation, 27).

This was an unprofessional expression of the prosecutor's personal opinion regarding appellant's guilt and credibility. These remarks far exceeded the bounds of propriety.

On these facts, I can conceive of no "reasonable basis designed to effectuate" appellant's interests for trial counsel's failure to object to these prejudicial remarks, or for post-trial counsel's failure to raise trial counsel's ineffectiveness. Absent appropriate cautionary instructions, these remarks require reversal.

Finally, I disagree with the majority that the proper remedy for post-trial counsel's ineffectiveness is leave to file post-trial motions "nunc pro tunc." This places an unnecessary burden on the judicial system and professional resources, and delays relief to which appellant is entitled. The record clearly establishes that the prosecutor's remarks were prejudicial, that trial counsel was ineffective in failing to object to the remarks, and that post-trial counsel was ineffective in failing to raise trial counsel's ineffectiveness. Trial counsel's ineffectiveness in failing to object to the prosecutor's remarks prevented appellant from receiving a fair trial.[1]

I dissent and would vacate the judgment of sentence and remand for a new trial.

Newly appointed or retained counsel must raise the ineffectiveness of his predecessor at his first opportunity or the claim will not be preserved for appellate review.[2] However, this rule does not and cannot apply where the new post-trial counsel is himself ineffective in failing to raise the ineffectiveness of trial counsel. Appellant cannot be deemed to have waived his claim of ineffective assistance of trial counsel because he failed to raise the issue in post-trial motions if he was denied effective as-

1. Trial counsel should have objected and requested cautionary instructions or made a motion for a mistrial. Since trial counsel did not object, I do not reach the issue whether cautionary instructions would have been sufficient in this case.

2. See *Commonwealth v. Smallwood*, 465 Pa. 392, 350 A.2d 822 (1976); *Commonwealth v. Carter*, 463 Pa. 310, 344 A.2d 846 (1975); *Commonwealth v. Strachan*, 460 Pa. 407, 333 A.2d 790 (1975); *Commonwealth v. Twiggs*, 460 Pa. 105, 333 A.2d 440 (1975); *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975).

sistance of counsel when post-trial motions were filed. Absent effective assistance of newly appointed or retained counsel, the issue of ineffectiveness of trial counsel cannot be waived. See *Commonwealth v. Musser,* 463 Pa. 85, 87, 343 A.2d 354, 354–55 (1975), and cases cited therein.

In *Commonwealth v. Wideman,* 453 Pa. 119, 306 A.2d 894 (1973), appellant sought relief pursuant to the Post Conviction Hearing Act ("PCHA") [3] on double jeopardy grounds. This Court held that appellant's failure to raise the issue on appeal did not bar him from seeking PCHA relief because appellant was without effective assistance of appellate counsel. Although *Wideman* was brought pursuant to the Post Conviction Hearing Act, the decision is equally applicable to the issue of appellant's waiver of the ineffective assistance of trial counsel on direct appeal. Without the effective assistance of post-trial counsel, appellant here cannot be deemed to have waived the ineffectiveness of his trial counsel.

In *Commonwealth v. Strachan,* 460 Pa. 407, 333 A.2d 790 (1975), this Court held that appellant did not waive his claim of ineffective assistance of trial counsel even though the issue was raised for the first time in his petition for allowance of appeal in this Court. Strachan was represented by counsel at the trial, but filed a pro se appeal to the Superior Court. In holding that appellant did not waive the issue of ineffectiveness of trial counsel by failing to raise the issue before the Superior Court, this Court held that although an uncounseled defendant may waive an issue, this principle is not applicable to a claim of ineffective assistance of counsel. "[I]t is unrealistic to expect . . . a layman to ferret out instances of ineffectiveness without the assistance of counsel." Id. at 410, 333 A.2d at 791. If the counsel who represents a defendant on post-trial motions is found to be ineffective,

3. Act of January 25, 1966, P.L. (1965) 1580, 19 P.S. §§ 1180–1 et seq. (Supp.1976).

the defendant himself can hardly be expected to ferret out the ineffectiveness of both his trial and post-trial counsel.[4] As in *Strachan,* the appellant did not waive the ineffectiveness of trial counsel.

The majority's reliance on *Commonwealth v. Dancer,* supra, and its progeny, is misplaced. It is true that these cases hold that ineffectiveness of counsel must be raised as an issue at the earliest stage in the proceedings at which the counsel whose ineffectiveness is being challenged no longer represents the defendant. However, our case law presupposes the effective assistance of the new counsel.

Moreover, *Dancer* expressly recognizes that there are circumstances in which ineffectiveness of trial counsel will not be waived by the failure to raise the issue on direct appeal. Where petitioner establishes the existence of "extraordinary circumstances" which justify his failure to raise the issue, *Dancer* explicitly allows petitioner to raise his claim. Id. 460 Pa. at 101, 331 A.2d at 438. In *Commonwealth v. Wideman,* supra, this Court held that ineffective assistance of counsel constituted an "extraordinary circumstance" which justified a petitioner's failure to raise an issue on direct appeal. Therefore, if post-trial counsel was ineffective, trial counsel's ineffectiveness is not waived.

The standard for determining whether post-trial counsel was ineffective was articulated in *Commonwealth ex*

---

4. As a rule, issues not raised by post-trial motions will not be considered on appeal. *Commonwealth v. Carter, supra; Commonwealth v. Gonzales,* 463 Pa. 597, 345 A.2d 691 (1975); *Commonwealth v. Spriggs,* 463 Pa. 375, 344 A.2d 880 (1975); *Commonwealth v. Bronaugh,* 459 Pa. 634, 331 A.2d 171 (1975). However, where the failure to raise issues on post-trial motions constitutes ineffective assistance of counsel, the issues are not waived. Just as *Dancer* was predicated on the effective assistance of appellate counsel, so *Carter* and cases cited above, presuppose the effective assistance of counsel on post-trial motions.

*rel. Washington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349, 352 (1967) (emphasis in the original):

"Counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests."

In order to decide whether post-trial counsel had a reasonable basis for failing to pursue the claim of trial counsel's ineffectiveness, it is necessary to evaluate the claim which trial counsel is charged with not pursuing. Since the claim of trial counsel's ineffectiveness is predicated on his failure to object to the prosecutor's closing remarks, it is in turn necessary to analyze these remarks.

The district attorney interjected his prejudicial personal opinion concerning appellant's credibility and guilt in his closing argument. This is highly improper. See e. g., *Commonwealth v. Collins*, 462 Pa. 495, 341 A.2d 492 (1975); *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975); *Commonwealth v. Russell*, 456 Pa. 559, 322 A.2d 127 (1974); *Commonwealth v. Toth*, 455 Pa. 154, 314 A.2d 275 (1974); *Commonwealth v. Revty*, 448 Pa. 512, 295 A.2d 300 (1972); *Commonwealth v. Potter*, 445 Pa. 284, 285 A.2d 492 (1971); ABA Project on Standards of Criminal Justice, Standards Relating to the Prosecution and Defense Function §§ 5.8(b) & (c), Prosecution Function (Approved Draft, 1971); Pennsylvania Supreme Court Code of Professional Responsibility DR 7–106(C)(4) (1974). The ABA Standards Relating to the Prosecution Function, supra, state in pertinent part:

"(b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant."

"(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury."

The district attorney repeatedly portrayed appellant as a liar, and stated that an explanation of the murder would not be forthcoming because the victim was dead and "the other party [was] not telling the truth."

In *Commonwealth v. Potter,* supra, this Court, in reversing Potter's conviction because the prosecutor branded his testimony as a "malicious lie," stated:

"[The prosecutor] injected his highly prejudicial personal opinion of appellant's credibility into evidence, thereby clearly and improperly intruding upon the jury's exclusive functions of evaluating the credibility of witnesses."

Id. at 287, 285 A.2d at 493 (citations omitted).

In *Commonwealth v. Cronin,* 464 Pa. 138, 346 A.2d 59 (1975), this Court reversed Cronin's conviction because the prosecutor expressed his personal opinion of Cronin's guilt. It stated:

"[A] prosecuting attorney may not indulge in personal assertions of guilt of a defendant either by direct statement or indirectly by figure of speech."

Id. at 143, 346 A.2d at 62.

"[S]uch *personal assertions* by the prosecutor on the guilt of the accused were beyond the scope of fair play and were reversible error."

Id. at 142, 346 A.2d at 61, quoting *Commonwealth v. Lark,* 460 Pa. 399, 404–05, 333 A.2d 786, 789 (1975) (emphasis in original).

The majority recognizes that the prosecutor's remarks in this case were improper, yet would remand to determine if there was a reasonable basis for trial counsel's failure to object to the prosecutor's remarks.

I disagree that a remand is necessary in this case. As the majority recognizes, where the record is sufficient to determine that there is no reasonable basis for counsel's omission, an appellate court may decide that counsel was ineffective without remanding for an evidentiary hear-

ing. Majority opinion at 696. This is precisely the case presented here. There is no factual issue in dispute.[5] Trial counsel's failure to object occurred during closing argument. The objectionable remarks are on the record; at that point in the trial, evidence not in the record could not be brought to the jury's attention. Moreover, the ineffectiveness of trial counsel was obvious from the record and post-trial motions could have been filed without resort to any other information. The record contains all that is necessary to resolve the issues of both trial and post-trial counsel's ineffectiveness.

In *Commonwealth v. Valle*, 240 Pa.Super. 411, 362 A. 2d 1021 (1976), the Superior Court held that Valle was denied effective assistance of counsel because his attorney failed to object to inflammatory comments made by the prosecutor during closing argument. The court decided that there was no need for an evidentiary hearing to determine whether defense counsel had a reasonable basis for failing to object to the remarks designed to effectuate his client's interests. In light of this Court's repeated condemnation of closing arguments of this nature, the Superior Court held that there was no reasonable basis for defense counsel to remain silent while the prosecutor continually exceeded the proper scope of closing argument.

Here too, there is no "reasonable basis designed to effectuate [appellant's] interests" in post-trial counsel's failure to raise the ineffectiveness of trial counsel and trial counsel's failure to object to the remarks. As the

---

5. See ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Post-Conviction Remedies § 4.5(a):

"Applications for post-conviction relief can appropriately be decided on the merits without a plenary evidentiary hearing . . . .

Such summary disposition is proper in all cases where there is no factual issue . . . ."

See *Dabbs v. People*, 175 Colo. 273, 275, 486 P.2d 1053, 1054 (1971). Where there is no factual dispute, an ineffective assistance of counsel claim should also be decided without an evidentiary hearing.

majority notes, comments of this sort can be so prejudicial that even cautionary instructions are not sufficient to cure the harm done. See e. g., *Commonwealth v. Cronin,* supra; *Commonwealth v. Lark,* supra; *Commonwealth v. Harvell,* 458 Pa. 406, 327 A.2d 27 (1974); *Commonwealth v. Russell,* 456 Pa. 559, 322 A.2d 127 (1974). Because the Court views remarks of this sort to be extremely prejudicial, any "strategy" which allows them to be made to the jury without objection is indeed, firm proof of counsel's ineffectiveness.

In view of these cases, how can counsel's stewardship be other than ineffective where he permitted such remarks without objection and, therefore, without at least a request for curative instructions.[6] If, as the majority suggests, it may be "effective to let remarks of this sort pass without objection for fear of calling attention to them," the defendant who is the victim of such remarks and who is represented by counsel who fails to object *will never be given the fair trial to which he is entitled.* *Commonwealth v. Valle,* supra; ABA Project on Stand-

---

**6.** There is no basis for the majority's conclusion that trial counsel may have been effective in waiving the issue if, as the majority hypothesizes, counsel failed to object in reliance on his belief that cautionary instructions compound prejudice. The majority's conclusion undermines the decisions of this Court which have relied upon cautionary instructions to cure errors at trial. See e. g., *Commonwealth v. Davenport,* 462 Pa. 543, 342 A.2d 67 (1975); *Commonwealth v. Brooks,* 454 Pa. 75, 309 A.2d 732 (1973). If this Court believes in cautionary instructions, it is improper to accept their alleged harmfulness as a reasonable basis for failing to ask for them.

The majority's assertion that counsel may be effective even where he fails to object to prejudicial remarks, based on his belief that cautionary instructions compound prejudice, is inconsistent with the rationale of the waiver doctrine. Timely objections are required to allow the trial court the opportunity to give cautionary instructions. *Commonwealth v. Sampson,* 454 Pa. 215, 311 A.2d 624 (1973). See McCormick, Evidence § 52 (2d ed. 1972). Where counsel does not make timely objection, he is deemed to have waived the issue. *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974). If, as the majority asserts, an objection and request for cautionary instructions only compound error, there would be no reason to require an immediate objection to preserve the claim.

ards of Criminal Justice, Standards Relating to the Prosecution and Defense Function §§ 5.8(b) & (c), Prosecution Function (Approved Draft, 1971).

Absent cautionary instructions, the prosecutor's remarks were sufficiently prejudicial to require reversal. In light of the case law, trial counsel was clearly ineffective in failing to object to these prejudicial remarks. Post-trial counsel was also ineffective in failing to raise trial counsel's ineffectiveness.

The majority refuses, in the face of a full and uncontradicted record, to hold that appellant was denied effective assistance of counsel. Instead, the majority remands for a useless evidentiary hearing. This wastes judicial and professional resources and causes unnecessary delay. On remand, the trial court, following our case law, will, of necessity, be obliged to reach the same result that this Court should reach today—and grant a new trial.

I dissent and would vacate the judgment of sentence and remand for a new trial.

MANDERINO, J., joins in this dissenting opinion.