**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Alfonso RAMOS–TORRES, Appellant.**

Superior Court of Pennsylvania.

Argued April 13, 2004.
Filed July 22, 2004.

---

Robert B. Mozenter, Philadelphia, for appellant.

Douglas J. Waltman, Asst. Dist. Atty., Reading, for Com., appellee.

BEFORE: BENDER, McCAFFERY and TAMILIA, JJ.

OPINION BY BENDER, J.:

¶ 1 Alfonso Ramos–Torres appeals from the May 22, 2003 judgment of sentence of sixteen to forty-five years' imprisonment imposed upon him following his conviction in a bench trial on drug possession and delivery charges. Appellant raises the following issues before the Court:

Trial Counsel was Ineffective when he advised the Appellant to Testify at the Motion to Suppress.

The Appellant was Denied Effective Assistance of Counsel because Trial Counsel Acquiesced to Joinder of Separate and Distinct Cases.

Trial counsel was Ineffective for Failure to Request the Honorable Scott D. Keller to Recuse Himself Following the Motion to Suppress.

Appellant's Brief, at 6. We affirm.

¶ 2 A brief factual and procedural history follows. Beginning in June of 2002, police conducted an investigation of Appellant upon suspicions of drug delivery and possession. Over the course of the next month, undercover detective Scott Errington (Errington) purchased cocaine indirectly from Appellant on four separate occasions. These transactions were facilitated by one of Appellant's usual customers, Cheryl Shealer (Shealer), who was unaware that Errington was a police officer. Typically, at Errington's request, Shealer would call Appellant, set up a meeting place, and meet with Appellant to purchase cocaine while Errington waited nearby. Errington would provide the money for the cocaine he requested as well as a minimal fee for Shealer for facilitating the buy. On the fourth such encounter, Appellant was arrested and taken into custody on July 3, 2002.

¶ 3 After posting bail, Appellant was released from custody. Shortly thereafter, Appellant contacted Royal West (West). West had known Appellant for a number of years and had frequently purchased cocaine from Appellant. During a conversation with West, Appellant asked West to kill Errington in exchange for money. A few days later, West contacted Detective Sergeant Weigner (Weigner) to notify him of Appellant's proposition. After meeting with Weigner and Errington on July 19, 2002, West wore a recording device during a purchase of cocaine from Appellant. While discussing the sale, Appellant offered West $5000 in exchange for killing Errington. Four similar drug transactions were arranged within the next week, all of which were recorded and witnessed under the surveillance of various detectives. During these transactions, Appellant repeated his offer for Errington's murder.

¶ 4 Given the above information, the detectives obtained an initial search warrant to search Appellant's residence for indications of drug proceeds, related records, and evidence that would establish ownership of the residence. During this search, a small quantity of marijuana, drug paraphernalia and large amounts of cash were found. Police then immediately applied for and obtained a second warrant in order to broaden the search to include controlled substances, specifically marijuana and crack cocaine, and materials used in the packaging of these substances for distribution. In addition to the house, the second search of the premises extended to the locked, detached garage and a vehicle parked therein. The vehicle was not reg-

istered to Appellant and was found to contain marijuana and over 700 grams of cocaine. The accumulation of evidence led to the issuance of an arrest warrant and Appellant's subsequent arrest on August 6, 2002.

¶ 5 Prior to Appellant's bench trial, Appellant filed a suppression motion which was heard on August 22, 2002. At the hearing, Appellant sought suppression of the evidence recovered from the vehicle found in his garage, claiming that the warrant was invalid due to lack of a reasonable nexus between the drug sales and his residence. More specifically, Appellant contended there was a lack of probable cause that evidence of illegal activity or contraband would be found at his residence. In support of his position, Appellant pointed to the fact that the police informant stated in his affidavit that the residence was never used in conjunction with the sale of drugs and that there was no other evidence linking the residence to the observed illegal activities. Appellant further contested the search of the station wagon found in his garage, claiming that there was no probable cause linking this vehicle to the illicit sales.

¶ 6 At the suppression hearing, Sergeant Weigner testified as to his recollection of the search. Appellant also took the stand and upon direct examination, admitted to ownership of the station wagon and its contents, specifically the cocaine found in the trunk of the vehicle [1]. At the conclusion of the hearing, the court upheld the warrant and subsequent search and seizure as valid and denied Appellant's request for suppression.

¶ 7 A bench trial was held on May 22, 2003. Appellant declined to testify and was found guilty of numerous charges relating to the possession and delivery of cocaine. On August 11, 2003, Appellant was sentenced to a cumulative sentence of 16 to 45 years of imprisonment. Throughout the trial and sentencing, Appellant was represented by Lawrence J. Hracho, Esquire. Subsequent to the imposition of sentence, Robert B. Mozenter, Esquire, entered an appearance and promptly filed a motion for extraordinary relief asserting trial counsel's ineffectiveness. On August 11, the court heard argument on Appellant's motion and issued an opinion denying relief. The present appeal followed.

¶ 8 Appellant raises three separate issues of trial counsel's ineffectiveness. However, prior to addressing the merits of these claims, we must determine whether these claims should be deferred to a subsequent collateral hearing pursuant to *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), or may be adjudicated by this court upon the record provided. In *Grant*, our Supreme Court announced that from that day forward claims of ineffectiveness of trial counsel should not be decided upon direct appeal but, instead, should await collateral review. *Grant* announced a departure from the longstanding approach taken with respect to ineffectiveness claims raised on direct appeal, first set forth in *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). For many years, the appellate courts of this Commonwealth routinely addressed claims of ineffective assistance of counsel raised upon direct appeal. Indeed, *Hubbard* demanded, at the risk of finding a waiver, that ineffectiveness claims be raised at the

---

1. "Q[by Appellant's counsel]: Whose station wagon was that? A [Appellant]: It was my station wagon—it was my station wagon under Richard Frymyer's name. Q: Who paid for it? A: I paid for it. Q: It was in your garage; is that correct? A: Correct... Q: Okay. Last question, Alfonso, as to the cocaine found in that vehicle was whose? A: It was my cocaine." N.T. Suppression Hearing, 8/22/02, at 20–21.

first opportunity subsequent to a change of counsel. Often this first opportunity was upon direct appeal.

¶ 9 The rationale for the change in approach was to allow for full development of ineffectiveness claims at a hearing, where necessary, and to thereby eliminate the need for appellate courts to become finders of fact where such claims are not apparent on the existing record. In a subsequent case, *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831, 853 (2003) the Supreme Court capsulized the *Grant* standard and its departure from the *Hubbard* rule:

> In *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), this Court overruled the procedural rule announced in *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (Pa.1977) requiring new counsel to raise claims of previous counsel's ineffectiveness at the first opportunity, even if that first opportunity is on direct appeal and the claims of ineffectiveness were not raised in the trial court. This Court announced a new general rule providing that a defendant "should wait to raise claims of ineffective assistance of trial counsel until collateral review." 813 A.2d at 738. *Grant* recognized, however, the prospect of exceptions to the general rule. 813 A.2d at 738 n. 14. The Court in *Grant* applied the new general rule to the parties in that case, dismissing Grant's claims of ineffective assistance of trial counsel— which were raised for the first time on appeal—without prejudice to his ability to raise the claims on collateral review. *Grant* further held that its new rule applies retroactively to "any other cases on direct appeal where the issue of ineffectiveness was properly raised and preserved." *Id.* at 738.

¶ 10 While *Grant* sets forth a general rule that ineffectiveness claims be preserved for collateral appeal, *Bomar*, as the quote above attests, and subsequent cases have elucidated circumstances under which adjudication upon direct appeal is both appropriate and allowable. In *Bomar*, 826 A.2d at 853, the court distinguished the evidentiary support for an ineffectiveness review found there as opposed to *Grant*:

> This appeal, however, involves a circumstance not present in, or addressed by, *Grant*: Appellant's claims of ineffective assistance of counsel were properly raised and preserved in the trial court. Following sentencing, trial counsel withdrew from the case and present counsel entered the matter and filed post-sentence motions on appellant's behalf, raising, *inter alia*, the same claims of trial counsel ineffectiveness now raised in this Court. The trial court conducted hearings on the post-sentence motions on March 4 and April 20, 1999, at which appellant's trial counsel testified. Moreover, the trial court addressed the ineffectiveness claims in its opinion. *See* Trial Court slip op. at 48–59. As a result, the concerns that led this Court in *Grant* to abrogate the *Hubbard* doctrine and adopt the new general rule deferring consideration of claims of ineffective assistance of trial counsel to collateral review are simply not present in this context.

¶ 11 As can be gleaned from the above quote, *Bomar* decided an ineffectiveness claim upon direct appeal where trial counsel had testified at a hearing and the trial court found the claims to be without merit in its opinion. *Id.* at 853. The Supreme court pointed to the "extensive record" as a means to avoid the concerns of *Grant* in regards to appellate fact-finding, stating "[i]n light of this ample record, there is no need to rely upon extra-record sources . . . to resolve appellant's ineffectiveness claims, as is so often the case

when such claims have not been raised and preserved in the trial court." *Id.* at 854.

¶ 12 In contrast, the present case does not meet the standard set forth in *Bomar*. At trial, current counsel raised prior counsel's ineffectiveness in a motion for extraordinary relief. Arguments [2] were heard and the trial court issued an opinion. While this does constitute some development of the record as in *Bomar*, there is, however, one additional factor that *Bomar* cautions against and which *Grant* is meant to prevent.

> Under *Hubbard*, appellate courts often had to engage in fact-finding in the form of speculation concerning the strategy counsel pursued at trial, a function that they were ill-suited to assume.

*Id.* at 854.

¶ 13 In the present case, there is no testimony on record from trial counsel which would reveal the rationale behind his strategy. While the record does contain a letter from trial counsel to Appellant, which provides some insight into the reasoning behind counsel's actions, it does not amount to the same opportunity which testimony would provide for counsel to give a full account of his thought process, nor does it subject counsel to cross-examination.

¶ 14 Through testimony, trial counsel can be afforded the chance to set forth a reasonable explanation to support his actions. This is especially important given the elements Appellant must prove in order to successfully show trial counsel's inadequacy. In order to prevail on a claim of ineffectiveness of counsel, Appellant must show that (1) the underlying claim is of arguable merit; (2) the counsel had no reasonable basis for his conduct; (3) the

ineffectiveness caused Appellant prejudice. *Commonwealth v. Copenhefer*, 553 Pa. 285, 719 A.2d 242, 250 (1998). Therefore, for a meaningful review of counsel's subjective intentions during the trial to take place, it is necessary for counsel to testify as to his rationale. Testimony may also assist the court in distinguishing between a strategy which is perhaps unconventional or less than ideal, but still may be deemed reasonable under ineffectiveness law, and one that has no reasonable basis at all.

¶ 15 In summary, while the issues of ineffectiveness were raised and preserved upon appeal, the record before us is not adequately developed to warrant adjudication on the merits. Nor does the *Bomar* exception to *Grant* apply to these circumstances. Absent testimony from trial counsel, there can be no meaningful interpretation of the trial strategy he employed. For this reason, we must adhere to the standard set forth in *Grant* and dismiss Appellant's claims without prejudice, allowing Appellant to bring such claims upon collateral appeal if he so chooses. Since the only issues raised must be deferred to a collateral, post-conviction proceeding, we will affirm the judgment of sentence.

¶ 16 Judgment of sentence affirmed.

---

**2.** Although the parties have referred to this proceeding as a "hearing," in practical effect, the proceeding did not involve the taking of testimony and was confined to argument on the impact of *Grant* upon the motion.