J-S77041-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GERALD L. FUNK | : | |
| | : | No. 220 MDA 2017 |
| Appellant | | |

Appeal from the PCRA Order December 30, 2016
In the Court of Common Pleas of Union County Criminal Division at
No(s):  CP-60-CR-0000175-1999

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                **FILED DECEMBER 12, 2017**

Appellant Gerald L. Funk appeals *pro se* from the December 30, 2016, order entered in the Court of Common Pleas of Union County dismissing his first petition filed under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  For the reasons that follow, we affirm.

The relevant facts and procedural history are as follows:  In the early morning hours of September 11, 1998, Appellant, who was then twenty-five years old, attacked a sixty-four-year-old woman as she was walking to work at Bucknell University in Lewisburg, Pennsylvania.  Appellant accosted the victim by the arms, choked her, and dragged her from the street to a cemetery, where he raped her.  Thereafter, Appellant was charged with attempted homicide, aggravated assault, rape, and robbery on August 3, 1999.

---

* Former Justice specially assigned to the Superior Court.

On December 13, 2000, represented by Michael Suders, Esquire, Appellant proceeded to a jury trial, following which he was convicted on all counts. Appellant proceeded to a sentencing hearing on January 17, 2001, at which the trial court sentenced Appellant to an aggregate of thirty years to sixty years in prison. Appellant filed a post-sentence motion, which the trial court denied, and Attorney Suders filed a direct appeal to this Court on Appellant's behalf.

On direct appeal, Appellant presented nine issues.[1] Adopting the reasoning set forth by the trial court in its April 10, 2001, opinion denying Appellant's post-sentence motion, this Court concluded Appellant was not entitled to relief and, consequently, on April 11, 2002, we affirmed his judgment of sentence. *See Commonwealth v. Funk*, 823 MDA 2001 (Pa.Super. filed 4/11/02) (unpublished memorandum). Our Supreme Court subsequently denied review. *Commonwealth v. Funk*, 825 A.2d 637 (Pa. 2003) (*per curiam* order).

_____

[1] Specifically, Appellant alleged: (1) The trial court erred in denying his pre-trial suppression motion; (2) The trial court erred in denying his motion to preclude the prosecutor from trying the case; (3) The trial court erred in admitting and using DNA evidence; (4) The trial court erred in denying Appellant's motion for arrest of judgment on two counts of robbery; (5) The jury's verdict was against the weight of the evidence; (6) Appellant's sentence was excessive; (7) Appellant should be resentenced before a different judge; (8) The trial court erred in prohibiting Appellant from introducing evidence of a vacant building at the crime scene; and (9) The trial court erred by permitting the prosecutor to present evidence that Appellant defended himself.

On December 11, 2003, Appellant filed a timely, *pro se* PCRA petition, new counsel was appointed, and on March 3, 2005, counsel filed an amended PCRA petition. Appellant subsequently expressed his desire to proceed *pro se*, and following a colloquy, the PCRA court granted Appellant's request to proceed *pro* se but directed that the previously appointed PCRA counsel serve as stand-by counsel. Thereafter, various hearings were held, with the PCRA court ultimately concluding, with the Commonwealth's stipulation, that trial counsel was ineffective for failing to argue for concurrency at the time of the imposition of sentence. Thus, the PCRA court, in effect, granted the PCRA petition, vacated Appellant's judgment of sentence, and imposed a new sentence, with an aggregate of thirteen years to thirty years in prison. PCRA Court Order, dated 9/4/12.

Appellant filed a post-sentence motion, which sought "the withdrawal of the plea and sentencing agreement entered into on September 4, 2012,…[and] an order to reinstate [Appellant's] PCRA petition." Post Sentence Motions, 9/20/12. After Appellant's motion was denied by operation of law, Appellant filed an appeal to this Court.

Concluding the Commonwealth and PCRA court had engaged in "unorthodox and improper maneuverings," a panel of this Court relevantly held:

> We conclude that the trial court did not abuse its discretion in imposing consecutive sentences; without underlying merit, there can be no ineffective assistance of counsel for failing to argue for the imposition of concurrent sentences. Thus, in that

there was no support for the Commonwealth's fallacious stipulation to the ineffectiveness of counsel, there was no basis to grant the PCRA petition, vacate the judgment of sentence, or resentence Appellant.

Clearly, there was no basis upon which the PCRA court could vacate the sentence imposed in 2001, so the Commonwealth designated a factitious basis of ineffective assistance of counsel that never had been raised and that was completely lacking in support in the record, and it "advised" the PCRA court to proceed in reliance thereon. Conveniently, Appellant requests this Court to vacate the sentence imposed, and the law requires that we do exactly that.

*Commonwealth v. Funk*, 854 MDA 2013, at *24-25 (Pa.Super. filed 1/27/14) (unpublished memorandum).

Consequently, this Court vacated the PCRA court's September 4, 2012, order and judgment of sentence, directed the reinstatement of the original judgment of sentence imposed on January 17, 2001, directed the reinstatement of Appellant's PCRA petition, and remanded for additional consideration thereof. *Id.* at *25. This Court relinquished jurisdiction.

Subsequently, by order entered on April 4, 2014, the PCRA court,[2] consistent with this Court's directive, reinstated the judgment of sentence entered on January 17, 2001, and reinstated Appellant's PCRA petition.

_____

[2] We note that, by order entered on March 5, 2014, the original PCRA court judge, Judge Harold F. Woelfel, Jr., recused himself, and the PCRA matter was reassigned to Judge Michael T. Hudock.

Thereafter, the PCRA court held numerous evidentiary hearings at which Appellant proceeded *pro se* with stand-by counsel.

By order and opinion entered on December 30, 2016, the PCRA court denied Appellant's PCRA petition,[3] and this timely *pro se* appeal followed.[4] The PCRA court did not direct Appellant to file a Pa.R.A.P. 1925(b) statement.

Appellant presents the following issues on appeal:

1. The PCRA court erred by dismissing Appellant's claim that [trial] counsel [was] ineffective in failing to raise a timely Rule 1100 violation.

2. The PCRA court erred by dismissing the claim that trial counsel was ineffective during the plea bargaining process.

3. The PCRA court erred by dismissing Appellant's claim that counsel was ineffective in failing to adequately challenge the sufficiency of the evidence to prove aggravated assault and robbery.

4. The PCRA court erred by dismissing Appellant's claim that [trial] counsel [was] ineffective during pre-trial stages where counsel failed to support his motion to suppress evidence with known info[rmation].

Appellant's Brief at 4.

Initially, we note the following relevant legal precepts.

When reviewing the denial of a PCRA petition, we must determine whether the PCRA court's order is supported by the record and free of legal error. Generally, we are bound by a PCRA

_____

[3] The PCRA court filed a supplemental opinion on January 18, 2017.

[4] Although Appellant's *pro se* appeal was not docketed until February 1, 2017, we shall deem it to have been filed on Monday, January 30, 2017, when it was handed to prison officials for filing. **See Commonwealth v. Little**, 716 A.2d 1287 (Pa.Super. 1998) (discussing prisoner mailbox rule); 1 Pa.C.S.A. § 1908 (computation of time).

court's credibility determinations. However, with regard to a court's legal conclusions, we apply a *de novo* standard.

***Commonwealth v. Johnson***, 635 Pa. 665, 139 A.3d 1257, 1272 (2016) (quotation marks and quotations omitted).

To be eligible for relief pursuant to the PCRA, Appellant must establish, *inter alia*, that his conviction or sentence resulted from one or more of the enumerated errors or defects found in 42 Pa.C.S.A. § 9543(a)(2). ***See*** 42 Pa.C.S.A. § 9543(a)(2). He must also establish that the issues raised in the PCRA petition have not been previously litigated or waived. ***See*** 42 Pa.C.S.A. § 9543(a)(3).

With regard to claims of ineffective assistance of counsel:

It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. To prevail on an ineffectiveness claim, the petitioner has the burden to prove that (1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance. The failure to satisfy any one of the prongs will cause the entire claim to fail.

***Commonwealth v. Benner***, 147 A.3d 915, 919–20 (Pa.Super. 2016) (quotation marks, quotations, and citations omitted).

We need not analyze the prongs of an ineffectiveness claim in any particular order. Rather, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the applicable facts and circumstances of the case. Finally, counsel cannot be deemed ineffective for failing to raise a meritless claim.

*Johnson*, 635 Pa. at 691, 139 A.3d at 1272 (citations omitted).[5]

In his first claim, Appellant contends trial counsel was ineffective in failing to file a motion to dismiss his case under former Pa.R.Crim.P. 1100.[6]

Initially, we note that Rule 1100 (now Rule 600)[7] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society.  *Commonwealth v. Jefferson*, 741 A.2d 222, 225 (Pa.Super. 1999).  In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right

---

[5] It is noteworthy that, at the time Appellant filed his direct appeal, in 2001, the prevailing law required that an appellant raise claims of ineffectiveness of trial counsel at the first opportunity of new counsel, on pain of waiver. **See** ***Commonwealth v. Hubbard***, 472 Pa. 259, 372 A.2d 687 (1977), *abrogated* by ***Commonwealth v. Grant***, 572 Pa. 48, 813 A.2d 726, 738 (2002). Accordingly, where a PCRA petitioner was represented by new counsel on a **pre**-***Grant*** direct appeal, in order to secure PCRA relief on a claim deriving from trial counsel effectiveness, he must demonstrate not only that trial counsel was ineffective, but also that appellate counsel was ineffective for either failing to litigate the claim at all, or was ineffective in the manner in which he litigated the claim of trial counsel's ineffectiveness on direct appeal. ***Commonwealth v. Chmiel***, 612 Pa. 333, 30 A.3d 1111, 1128 (2011). However, in the case *sub judice*, Appellant was represented by Attorney Suders in both the trial court and on direct appeal.  Thus, the instant PCRA proceeding was the first opportunity for Appellant to raise claims pertaining to trial counsel's effectiveness, and thus, it was unnecessary for him to "layer" his claims of ineffectiveness.

[6] We note that, at the PCRA hearing, trial counsel confirmed that he did not file a Rule 1100 motion to dismiss, noting that, in his opinion, such a motion would have been frivolous.  N.T., 11/23/15, at 118.

[7] Effective April 1, 2001, Pa.R.Crim.P. 1100 was amended and renumbered Pa.R.Crim.P. 600.  However, since Rule 1100 was in effect during the time of Appellant's trial proceedings below, we shall analysis his claim thereunder.

to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. *Id.* The administrative mandate of Rule 1100 certainly was not designed to insulate the criminally accused from good faith prosecution through no fault of the Commonwealth. *Id.*

We begin our analysis by calculating the "mechanical run date" for Rule 1100 purposes. As our Supreme Court has explained,

> The mechanical run date is the date by which the trial must commence under Rule 1100. It is calculated by adding 365 days (the time for commencing trial under Rule 1100) to the date on which the criminal complaint is filed. . . .[T]he mechanical run date can be modified or extended by adding to the date any periods of time in which delay is caused by the defendant [or the defendant's attorney]. Once the mechanical run date is modified accordingly, it then becomes an adjusted run date.

*Commonwealth v. Cook*, 544 Pa. 361, 676 A.2d 639, 645 n.12 (1996). Any delay caused by the need to reschedule a trial because of a continuance attributable to the defense constitutes excludable time, even if the defendant was prepared to go to trial at an earlier date. *Id.* at 374, 676 A.2d at 645.

In the instant case, the PCRA court determined that there was no merit to Appellant's underlying Rule 1100 claim. Specifically, the PCRA court reasoned as follows:

> The Commonwealth filed its complaint against [Appellant] on August 3, 1999. Pursuant to Pa.R.Crim.P. 1100, [which was] in effect at the time, the mechanical run date for [Appellant's] trial was August 2, 2000. Trial commenced with jury selection on November 11, 2000, some one hundred (100) days after the run date. [Appellant] argues that none of the pre-trial delay is attributable to him. . . .[Specifically, Appellant] argues that the delays related to the filing of his Omnibus Motion, the Amended

- 8 -

Omnibus Motion, and Motion to Compel Discovery should count against the Commonwealth. [The PCRA] court disagrees.

Initially, [Appellant's] attorney requested and received a continuance of the preliminary hearing from August 12, 1999, to September 2, 1999, for an excludable period of twenty-one (21) days. The court also counts as excludable the nine day time during which [Appellant] was without counsel from April 24, 2000, to May 3, 2000, when trial counsel entered his appearance of record. On May 9, 2000, trial counsel filed a motion for continuance to file an amended omnibus motion. Counsel filed this motion on May 24, 2000.

Trial counsel's issues in the amended motion included various issues related to DNA evidence, which apparently was the Commonwealth's strongest evidence. These issues included the request to hire a DNA expert, a Motion to Suppress Evidence, and a motion to compel photos of DNA exhibits. The trial court granted this motion on July 26, 2000. The court finds that the sixty-three (63) day period from the filing of the Amended Omnibus Motion to its decision is excludable as the [delay related thereto was attributable to Appellant]. The court granted [Appellant's] motion to hire a DNA expert in its July 26, 2000, order on [Appellant's] Amended Omnibus Motion. Jury selection in [Appellant's] trial was scheduled for August 15, 2000. The trial court granted this motion. Jury selection took place on November 14, 2000. Testimony began on December 13, 2000. The time of this continuance is also excluded.

The excludable time in this case totals, at least, one hundred ninety-seven (197) days, including the time when [Appellant] did not have counsel, the delay related to the Amended Omnibus Motion that rendered [Appellant] unavailable for trial, and the delay in trial from the August 2, 2000, motion to the commencement of jury selection on November 14, 2000.

PCRA Court Opinion, filed 1/18/17, at 1-2.

We agree with the PCRA court's reasoning in this regard and conclude that trial counsel cannot be deemed ineffective in failing to raise a meritless claim. **See Johnson**, **supra**.

In his next claim, Appellant contends trial counsel was ineffective during the plea bargaining process. Specifically, he claims that guilty plea counsel did not adequately explain the deal offered by the Commonwealth, including failing to inform Appellant of "the deal currently available at trial [of] 8-20 years, 1 count rape, and 7 felonies withdrawn[.]" Appellant's Brief at 15. He further asserts guilty plea counsel did not inform him that the trial court judge was willing to forego his general "policy" that all pleas on the day of trial are considered to be open pleas to all counts charged in the information. *See id.*

"[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S.Ct. 1399, 1408 (2012). In *Commonwealth v. Chazin*, 873 A.2d 732 (Pa.Super. 2005), this Court addressed the issue of ineffectiveness of counsel with regard to counsel's duty to inform a defendant of the risks and benefits of a plea offer. This Court noted that in order for a defendant to be entitled to relief, he has the burden of proving that: (1) an offer for a plea was made; (2) trial counsel failed to inform him of such offer; (3) trial counsel had no reasonable basis for failing to inform him of the offer; and (4) he was prejudiced thereby. *Id.* at 735.

In the case *sub judice*, at the PCRA hearing, trial counsel testified as follows upon direct-examination by Appellant:

> **Q:** July 26—no, not July 26—July 6, 2000, did [the district attorney] at a pretrial conference make a plea offer?

- 10 -

**A:** Whatever the date was there was a plea offer made.

**Q:** And did you have the Sheriff's Department take me to the District Attorney's Office to hear that plea offer on that date?

**A:** I don't recall the specifics of that date, but the plea offers were always communicated to you.

\*\*\*

**Q:** Was it before the July 26th, 2000 pretrial hearing?

**A:** The record should speak for itself on that, what the date was.

**Q:** Was that the eight- to 20-year offer for the count of rape, withdraw all remaining charges?

**A:** I remember it came down to something like that, yeah.

**Q:** And do you know if I rejected any prior plea offers?

**A:** You rejected all of the offers, eventually.

**Q:** On December 13th, 2000 at trial, did you tell me that [the trial court judge] has a policy that at trial all pleas are open pleas to all charges?

**A:** I probably told you that at some point, but I think they waived that, and that was the—one of the reasons why the sentence of 40 to 60—40 to 80, whatever it was originally, was a surprise, because he agreed to just the eight years or whatever it was at trial. So he was going to waive that at that point.

**Q:** So if I would have taken a plea at trial, [the trial court judge] was willing to impose the eight to 20; is that what you just said?

**A:** Right. Yeah, he was willing to not accept an open plea.

N.T., PCRA hearing, 11/24/15, at 172-74.

Further, trial counsel testified as follows at the PCRA hearing upon cross-examination by the district attorney:

**Q:** [Trial counsel], do you remember that it was the day trial began that I offered a plea to just the rape, eight years to 20 years, and that we went and discussed with the [trial court judge] whether or not he would forego his policy, and that the Judge said that he would? Do you remember that?

**A:** I remember it was—it was—there was before-the-trial negotiations, and right after that the trial. I remember going down there, yeah.

**Q:** And then after we did that, we brought [Appellant] into my office with yourself, me, Detective Neitz, and offered—I offered to him the eight to 20 years. Do you remember that's –that we sat together in the office just before trial?

\*\*\*

**A:** I remember that there were discussions like that. I'm not sure whether that was—was the actual day of trial. I remember the last time talking to him I think I was downstairs, I don't know.

**Q:** Do you remember during the discussions [Appellant] hearing the offer clearly and then indicated—leaned over, that he would—said that he would—I guess we're going to trial or we're not going to—I'm not going to plead; he rejected it?

**A:** Yeah, I believe—

**Q:** In this meeting.

**A:** To my recollection that might have been like the day before.

*Id.* at 175-77.

Moreover, Appellant questioned the district attorney at the PCRA hearing, and the following relevant exchange occurred:

**Q:** The last [plea] discussion immediately prior to trial, who were those discussions with?

**A:** Pardon me?

**Q:** Who were the discussions with?

**A:** Initially, between counsel, then counsel with you, and then counsel and I approached the judge to see if he would forego his normal policy of not allowing pleas on the day of trial, which he indicated he would. There was then a meeting with [trial counsel], myself, Bill Neitz and you in my office, where you were offered a plea to the rape with a bottom of the standard range, I believe, which was 96 months to 20 years. You, in that meeting, leaned forward and said I'm going to trial and that was the end of it, and we proceeded to trial.

**Q:** With regard to the meeting that you just testified to, are you sure that didn't occur during May or July of 2000?

**A:** Yes. That was immediately prior to trial, that did happen.

**Q:** Okay. And that was for 96 months?

**A:** It was an offer 96 months to 20 years, 8 years to 20 years on the rape.

**Q:** All right.

**A:** And dismiss the remaining charges. My desire was to not have to have the victim testify.

N.T, PCRA hearing, 4/24/12, at 16-17.

Based on the aforementioned, the PCRA court concluded:

The credible testimony offered by [the] District Attorney [ ] and trial counsel during the PCRA hearing. . .establishes that, contrary to [Appellant's] testimony, the proposed plea agreement was communicated to [Appellant] either on the morning of the commencement of trial or very close to that date, and that [Appellant] rejected the plea agreement. Trial counsel fulfilled his duty to inform [Appellant] of the proposed agreement. [Appellant] himself rejected the plea agreement and chose to take his chances at trial.

PCRA Court Opinion, filed 12/30/16, at 9.

We agree with the PCRA court's reasoning and conclude Appellant is not entitled to relief on his claim of ineffective assistance of trial counsel. *See Chazin*, *supra*.

In his next claim, Appellant contends that counsel was ineffective in failing to adequately challenge the sufficiency of the evidence to prove aggravated assault and robbery. In this regard, he argues the evidence does not sufficiently establish that he caused serious bodily injury or that he committed a felony during the course of committing a theft.

- 13 -

Initially, we note that, while Appellant argues at length that the evidence is insufficient as to aggravated assault and robbery, he conclusory opines that there is no reasonable strategic basis for counsel's prejudicial failure to raise his sufficiency claims. Further, it is not clear whether Appellant is arguing that trial counsel was ineffective in failing to make/argue properly a motion in the trial court or whether counsel was ineffective in failing to raise/argue properly the sufficiency issue on appeal.

In any event, as the PCRA court notes:

> [There was sufficient evidence presented] from which the jury could have found beyond a reasonable doubt that [Appellant] intentionally caused serious bodily injury to his victim. This evidence included strangulation to the point of unconsciousness, which could have resulted in death; the petechial hemorrhage to the victim's face, [and] the victim's own testimony that it took a month for her throat to return to normal.

PCRA Court Opinion, filed 12/30/16, at 3-4.

Further, the trial court concluded in its April 10, 2001, opinion denying Appellant's post-sentence motion that the evidence sufficiently revealed Appellant committed a felony during the course of committing a theft, and this Court accepted the trial court's reasoning upon direct appeal. Therefore, Appellant is not entitled to relief on his ineffectiveness claim. *See Benner*, *supra*.

In his final claim, Appellant contends trial counsel was ineffective in failing to support his pre-trial motion to suppress the DNA evidence with

known information.[8]  Appellant presents a laundry list of statements contained in the affidavit of probable cause and contends trial counsel should have challenged the accuracy of the statements.  Specifically, he avers trial counsel should have challenged the following alleged misstatements of fact contained in the affidavit of probable cause: (1) The affidavit provided a description of the assailant, which was different than the description given to the police by the victim; (2) The affidavit mistakenly indicated that a photographic line-up was used when, in fact, the police showed the victim a single photograph of Appellant; (3) The affidavit mistakenly indicated that a police sketch, which was drawn based upon the victim's description of her attacker, resembled Appellant; (4) The affidavit inaccurately suggested that only long, brown hair was found on the victim's clothing; (5) The affidavit indicated that the assailant wore a black shirt with a red collar, similar to shirts worn by Pizza Hut employees; however, the affidavit omitted the fact that Appellant had returned his Pizza Hut shirt to his employer six weeks prior to the assault when he resigned; and (6) The affidavit indicated Betty Lyman saw Appellant in the vicinity of the crime at approximately 4:00 a.m.; however, Ms. Lyman

---

[8] On May 7, 1999, Detective William Neitz filed an application for a search warrant, which was supported by an affidavit of probable cause.  On May 8, 1999, a search warrant was issued to "complete [a] body search of [Appellant,] including blood, pubic hairs, head hairs, and any other specim[e]ns needed to satisfy a standard rape suspect kit."  Trial Court Opinion, filed 4/12/10, at 6.

- 15 -

is a known liar and the affidavit omitted this fact. We conclude Appellant is not entitled to relief on his ineffectiveness claim.

In the case *sub judice*, the record reveals that trial counsel filed a pre-trial motion seeking to suppress the DNA evidence collected from Appellant on the basis the warrant lacked probable cause. Therein, trial counsel averred the affidavit lacked sufficient probable cause since: the perpetrator had short hair whereas Appellant had long hair, the police sketch did not resemble Appellant, the police utilized statements of Ms. Lyman who was known by authorities to be less than truthful, and the victim stated the shirt worn by her attacker was similar to a Bucknell Bison cafeteria shirt. Moreover, trial counsel filed an amended pre-trial suppression motion arguing that the affidavit of probable cause contained material misrepresentations.

Furthermore, at a suppression hearing held on January 31, 2000, trial counsel argued the search warrant should be deemed invalid since the affidavit of probable cause contained several misrepresentations of material fact. In essence, trial counsel sought to show that the affiant, Detective Neitz, was acquainted with Appellant prior to the incident and fashioned an affidavit of probable cause, which falsely pointed to Appellant as the perpetrator. In this vein, trial counsel questioned Detective Neitz regarding various matters, including whether the victim had indicated her attacker wore a Pizza Hut type delivery shirt or a Bucknell Bison cafeteria shirt, whether a piece of long, brown hair was found on the victim, and whether the police sketch resembled

Appellant. Trial counsel specifically argued that the affidavit of probable cause "does not accurately depict what was told to Officer Neitz" by the victim. N.T., suppression hearing, 1/31/2000, at 15. He noted that Appellant had long hair whereas the victim described her attacker as having short hair.[9] *Id.* at 16.

On July 26, 2000, a supplemental suppression hearing was held, at which trial counsel extensively cross-examined Detective Neitz regarding the validity of the evidence supporting the affidavit of probable cause, particularly the evidence set forth identifying Appellant as the possible perpetrator. Specifically, he cross-examined Detective Neitz as to the accuracy of Ms. Lyman's statement that, at the time of the incident, Appellant telephoned her, indicating he was in the vicinity where the incident subsequently occurred. N.T., suppression hearing, 7/26/2000, at 102-04. Trial counsel further cross-examined Detective Neitz regarding the victim's report that she heard a "karate yell" before she was attacked and whether he investigated how many people in the area attended karate classes. *Id.* at 104-05. Trial counsel also cross-examined Detective Neitz about the long, brown hair found on the victim's clothing and whether the source of the hair was from someone other than the attacker. *Id.* at 106-08. Trial counsel additionally cross-examined

---

[9] At the conclusion of this hearing, the trial court judge recused herself; however, upon the assignment of a new trial court judge, the parties agreed that the transcript of the notes of testimony would be incorporated for review by the newly-assigned judge.

Detective Neitz as to the affidavit's accuracy of the victim's description of the shirt worn by her attacker. *Id.* at 108-12.

At the PCRA hearing, trial counsel indicated that his pre-trial strategy was to demonstrate that the police used misstatements, exaggerations, and omissions to secure the search warrant. N.T., PCRA hearing, 11/24/15, at 25. He testified that, since the victim never saw her attacker's face, his primary trial strategy was to attempt to have the DNA evidence excluded or, alternatively, lessen the impact of the DNA evidence. N.T., PCRA hearing, 2/17/16, 8-9. Appellant, himself, admitted during the PCRA hearing that, in litigating the suppression motion, trial counsel's strategy was "that the Commonwealth was relying on false information to support unwarranted charges." N.T., PCRA hearing, 11/24/15, at 32.

Based on the aforementioned, we initially note that, with regard to many of the specific statements of alleged misrepresentation set forth by Appellant, trial counsel, in fact, challenged the accuracy of these statements during the litigation of Appellant's suppression motion. N.T., suppression hearing, 1/31/2000, at 15 (trial counsel argued the affidavit of probable cause "does not accurately depict what was told to Officer Neitz" by the victim); *Id.* (trial counsel argued the affidavit of probable cause improperly indicates the police sketch resembles Appellant). Trial counsel noted as much during the PCRA hearing. *See* N.T., PCRA hearing, 11/24/15, at 57-59 (trial counsel noted that he briefed and addressed at the suppression hearing the fact the affidavit

of probable cause inaccurately suggested that only long, brown hair was found on the victim's clothing); *Id.* at 69, 93 (trial counsel testified that he briefed and addressed at the suppression hearing the fact Ms. Lyman is not credible). Thus, there is no merit to Appellant's claim that trial counsel failed to challenge the accuracy of these statements contained in the affidavit of probable cause.

Moreover, as to the remaining statements, trial counsel set forth a reasonable, strategic basis for not challenging the specific statements. *Id.* at 43-52 (trial counsel testified that he did not challenge whether the affiant, Detective Neitz, conducted a photographic line-up since, at the suppression hearing, Detective Neitz admitted that he did not conduct such a line-up); *Id.* at 60-65 (trial counsel testified that he did not challenge whether Appellant had a Pizza Hut shirt in his possession, despite the fact he previously resigned from his employment, since witnesses informed trial counsel Appellant may have stolen such a shirt). Accordingly, we agree with the PCRA court that Appellant is not entitled to relief on his ineffective assistance of counsel claim. *See Benner*, *supra*.

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/12/2017

- 19 -