J-A25002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| LINDSAY NICOLE WARREN | |
| Appellee | No. 476 MDA 2019 |

Appeal from the Order Entered March 15, 2019
In the Court of Common Pleas of York County
Criminal Division at No.: CP-67-CR-0005097-2018

BEFORE:  STABILE, McLAUGHLIN, and MUSMANNO,JJ.

MEMORANDUM BY STABILE, J.:                **FILED JANUARY 10, 2020**

The Commonwealth appeals from the March 15, 2019 order of the Court of Common Pleas of York County ("trial court"), granting Appellee Lindsay Nicole Warren's omnibus pretrial motion.  Upon review, we vacate and remand.

On May 9, 2018, Officer Fred Lucas, Springettsbury Township Police Department, filed a multi-count criminal complaint, charging Appellee with, *inter alia*, a number of vehicle code offenses, including driving under the influence ("DUI"), reckless driving, failure to obey authorized persons directing traffic, possession of a small amount of marijuana, and possession of drug paraphernalia.  In his affidavit accompanying the complaint, Officer Lucas stated:

> On March 17, 2018 Springettsbury Township Police Department conducted a DUI sobriety check point in the 1900 block of E Market St from 2300-0300 hours.  The check point was set up on the

eastbound and westbound lanes of travel of E Market St. The DUI check point had clear and posted "Sobriety Check Point" signs on both entrances. Several uniformed police officers from York County worked the DUI check point.

At approximately 0227 hours, Cpl Lawton, with Springettsbury Township Police Department, advised a black sedan entered the eastbound entrance of the sobriety check point and failed to stop after several officers attempted to stop the vehicle. Cpl Lawton advised the black sedan exited the sobriety check point and was last seen traveling south on S Vernon St, towards Eastern Blvd and Mt Rose Ave. Cpl Lawton advised the first three letters of the sedan's registration was "HMF" and the operator was a white female with long hair.

I searched the area of where the black sedan was last seen traveling. While I was traveling south on Haines Rd, I observed a black Hyundai Elantra bearing PA registration HMF3741, turn south on Haines Rd off of 7th Ave, which is adjacent of where the sobriety check point was being conducted.

I positioned my police cruiser (A5) behind the Hyundai. I activated my emergency lights and sirens and conducted a traffic stop in the area of Mt Rose Ave at 183. I made contact with the operator, who I positively identified as [Appellee], by her PA driver's license. I observed [Appellee] had a disheveled look to her person and both of her eyes were bloodshot. I asked [Appellee] if she had anything to drink. [Appellee] advised she had three drinks earlier in the night. While speaking with [Appellee], I detected the odor of an alcoholic beverage coming from her expired breath. I also detected the odor of marijuana coming from inside the Hyundai.

I requested [Appellee] to exit the Hyundai to perform field sobriety tests. The field sobriety tests were administered on the roadway of Mt Rose Ave. The roadway was smooth, level and dry. There were no adverse weather conditions. At the conclusion of the field sobriety tests and based on the totality of the circumstances, it was in my opinion that [Appellee] was under the influence to a degree that rendered her incapable of safely operating a vehicle. I took [Appellee] into custody and secured her in my police cruiser. Ofc Landis was on scene and he advised that he also detected the odor of marijuana coming from [Appellee's] vehicle.

Affidavit of Probable Cause, 5/9/18 (sic). Appellee waived her preliminary hearing and her charges were held for court. On September 10, 2018, the Commonwealth filed an information, charging Appellee with the following ten counts: **Count 1**: DUI (Alcohol), 75 Pa.C.S.A. § 3802(a)(1); **Count 2**: DUI

(Alcohol), 75 Pa.C.S.A. § 3802(b); **Count 3**: DUI (Benzoylecgonine and/or Amphetamine), 75 Pa.C.S.A. § 3802(d)(1)(ii); **Count 4**: DUI (Cocaine), 75 Pa.C.S.A. § 3802(d)(1)(iii); **Count 5**: DUI (Alcohol, Benzoylecgonine and/or Amphetamine), 75 Pa.C.S.A. § 3802(d)(3); **Count 6**: Possession of a Small Amount of Marijuana for Personal Use, 35 P.S. § 780-113(a)(31)(i); **Count 7**: Possession of Drug Paraphernalia, 35 P.S. § 780-113(a)(32); **Count 8**: Reckless Driving, 75 Pa.C.S.A. § 3736(a); **Count 9**: Obedience to Authorized Persons Directing Traffic, 75 Pa.C.S.A § 3102(1); and **Count 10**: DUI (Alcohol, Benzoylecgonine and/or Amphetamine), 75 Pa.C.S.A. § 3802(d)(2). *See* Information, 9/10/18.

On September 21, 2018, Appellee was arraigned. On the same date, her attorney, Jeremy David Williams, Esq., entered his appearance. On December 12, 2018, the trial court listed this case for trial during the January 2019 trial term. N.T. Hearing, 12/12/18 at 3. At the January 7, 2019 call of the list, the trial court directed that the case remain listed for trial. N.T. Hearing, 1/7/19 at 4-5. On January 22, 2019, Appellee again appeared for a call of the list, at which point the trial court granted her a trial continuance, scheduling this case for the March 2019 term. N.T. Hearing, 1/22/19 at 4.

On February 1, 2019, Appellee filed an omnibus pretrial motion, wherein she acknowledged its untimeliness. *See* Omnibus Motion, 2/1/19 at ¶ 6 ("This motion was not timely filed."). To overcome the untimeliness of her motion, Appellee alleged only that "[a]dditional discovery was provided most recently on or about January 17, 2019." *Id.* at ¶ 8. In the motion, Appellee argued

- 3 -

that Officer Lucas lacked probable cause or reasonable suspicion to stop her and that all evidence resulting from that traffic stop be suppressed. Specifically, Appellee asserted that "Officer Lucas did not possess either reasonable suspicion or probable cause to believe that [she] or [her vehicle] was in violation of any provision of the motor vehicle code nor reasonable suspicion to believe that [Appellee] was engaged in criminal activity." *Id.* at ¶ 18.

On February 21, 2019, the Commonwealth responded to the omnibus motion, arguing that it be dismissed as untimely. On March 1, 2019, the trial court conducted an evidentiary hearing on the omnibus motion. The Commonwealth offered the testimony of Corporal John D. Lawton and Officer Lucas.

Corporal Lawton testified that he had been a police officer for nineteen years, six of which he spent at Springettsbury Township Police Department. N.T. Hearing, 3/1/19 at 4. He testified that, on March 17, 2018, he was involved in a checkpoint in the 1900 block of East Market Street that started at 11:00 p.m. *Id.* at 4-5. According to Corporal Lawton, although he was involved with the setup and running of the checkpoint, Sergeant Brian Wilbur was in charge. *Id.* at 5. Describing his duties at the checkpoint, Corporal Lawton testified that he "was a safety supervisor, just making sure that all of the officers were doing their job safely and trying to identify any kind of hazards for them." *Id.* Corporal Lawton testified that he was in the area

- 4 -

"where vehicles were being stopped." *Id.* With respect to his interaction with

Appellee, Corporal Lawton testified:

> It was around I would say 2:00 to 2:30. There was a – I heard some of the guys that were working the line start yelling for her, it sounded like for someone to stop, and when I looked over I saw a small black sedan driving through the checkpoint area and the safety area at what I would say was a little bit faster speed than what we had seen for cars that were stopping. The vehicle continued to drive through the checkpoint, and as it passed me I was able to see the driver and the description of the vehicle.

*Id.* at 6. Corporal Lawton recalled that Appellee was coming from the

eastbound direction, *i.e.*, from the York City area. *Id.* He further testified

that Appellee would have seen signs prior to reaching the checkpoint. *Id.* at

6-7. In specific, he testified:

> We had signs placed out saying checkpoint ahead. We had cones placed out brining it down into a single lane, it is actually a double lane in that area, we had cones set out to bring it down into a single lane, including additional signs saying that the vehicles needed to stop ahead.

*Id.* at 7. The checkpoint was open and active when Appellee drove through

it. *Id.* at 8. Finally, Corporal Lawton testified that when Appellee failed to

stop, he shared her information with other officers via radio. "I provided

information regarding a small black sedan with a white female driver. I believe

I also included that she had longer hair. After I had given out that initial

information another officer working the checkpoint provided the first three

letters of the registration, which I also then put out." *Id.* Appellee did not

cross-examine Corporal Lawton.

The Commonwealth next called Officer Lucas to the stand, who testified

that he was going into his third year as a police officer at Springettsbury

Township.  **Id.** at 10.  Officer Lucas further testified that he had training and experience in detecting impaired driving.  **Id.**  Specifically, he had training in administering field sobriety tests, having made "close to seventy" DUI arrests in his career.  **Id.**  Officer Lucas testified that he was working on the night of March 17, 2018, but was not involved with the checkpoint.  **Id.** at 11.

According to Officer Lucas, he was in a marked patrol car wearing a marked uniform when he received Corporal Lawton's radio dispatch.  **Id.** Officer Lucas recalled that Corporal Lawton had asked him whether he was in the area.  **Id.**  Officer Lucas responded in the affirmative.  **Id.**  Thereafter, Corporal Lawton shared with him the vehicle and driver information.  **Id.**  In particular, Officer Lucas testified that Corporal Lawton informed him that "a black sedan was last seen heading into the area of Fayfield" south of the checkpoint and that the driver was "a white female with longer hair."  **Id.** at 11-12.  In addition, Corporal Lawton also advised Officer Lucas of the first three letters of the vehicle's license plate.  **Id.** at 11.

Officer Lucas initiated a search for the black sedan, "traveling on Haines Road, which is kinda [sic] adjacent to where the checkpoint would have been." **Id.** at 11-12.  Within three to five minutes of the radio dispatch, Officer Lucas located the vehicle in that area.  **Id.** at 12, 15.  He testified that the vehicle "matched the same description I was provided through the radio."  **Id.** at 12. In describing his encounter with the vehicle, Officer Lucas stated "it was traveling east on North Avenue—I am sorry, Seventh Avenue, and it came to a stop, and then proceeded to travel south on Haines Road in front of me."

*Id.* Officer Lucas ultimately initiated a traffic stop "in the area of Mount Rose and I83." *Id.* According to Officer Lucas, Appellee was the sole occupant of the black sedan. *Id.* at 13. Officer Lucas testified:

> I could smell the odor of an alcoholic beverage coming from her breath. I noticed that her eyes were red and bloodshot. She appeared to have a disheveled look later through my investigation while speaking to her. I believe she was involved in a domestic incident earlier in the night.
>
> . . . .
>
> Besides the odor of alcohol I could also smell the odor of marijuana coming from inside the vehicle, which led me to believe that there was a possibility that there was marijuana inside that vehicle as well.

*Id.* at 13-14. Based on his observation, Officer Lucas testified that he asked Appellee to exit the vehicle. *Id.* at 14. Officer Lucas recalled that he then administered a field sobriety test following which he determined Appellee to be incapable of safely operating her vehicle. *Id.* As a result, Officer Lucas testified that he arrested Appellee. *Id.*

Appellee declined to cross-examine Officer Lucas. Thereafter, the parties proceeded to argument. At that point, Attorney Williams offered a new basis for seeking suppression. Attorney Williams argued for the first time that the DUI sobriety checkpoint did not comply with the *Tarbert*/*Blouse* guidelines.[1] *Id.* at 20. The Commonwealth immediately objected, noting that the issue of *Tarbert*/*Blouse* "was never raised in the motion." *Id.* at 21.

_____

[1] *Commonwealth v. Blouse*, 611 A.2d 1177 (Pa. 1992), and *Commonwealth v. Tarbert*, 535 A.2d 1035 (Pa. 1987) (plurality) (generally known as the "*Tarbert*/*Blouse* guidelines").

Additionally, the Commonwealth argued that it "was not on notice that the defense was challenging the actual checkpoint." *Id.*; *see id.* at 23 ("[T]hat is absolutely ridiculous. [Appellee] has never put the Commonwealth on notice that they were challenging anything which regards to the validity of the checkpoint or the way that checkpoint was run."). On March 15, 2019, the trial court granted Appellee's omnibus suppression motion. The Commonwealth timely filed in this Court an interlocutory appeal as of right under Pa.R.A.P. 311(d). Both the Commonwealth and the trial court complied with Pa.R.A.P. 1925.

On appeal, the Commonwealth raises three issues for our review:

[I.] Did the lower court err in granting [Appellee's] motion to suppress where [Appellee] filed an omnibus motion outside of the thirty day period proscribed by Pa.R.Crim.P. 581(B) and where there is no justification or exception that excuses the untimely filing?

[II.] Did the lower court err in granting [Appellee's] motion to suppress on the basis that the Commonwealth failed to show the validity of the DUI checkpoint where [Appellee] waived this issue when she failed to raise this issue in her omnibus pre-trial motion with specificity and particularity as required by Pa.R.Crim.P. 581(D)?

[III.] Did the lower court err in granting [Appellee's] motion to suppress on the basis on a stop not supported by probable cause or reasonable suspicion where the officer had probable cause to effectuate a traffic stop where [Appellee] failed to stop at a DUI check point despite multiple officers instructing her to do so and where [Appellee] and her car matched the description of the driver and the vehicle that failed to stop at the DUI check point?

Commonwealth's Brief at 4-5 (sic).

We begin with the Commonwealth's first issue, as it is dispositive of this case. The Commonwealth argues that the trial court abused its discretion in

granting Appellee's omnibus suppression motion because she failed to file it within the thirty-day period provided for in Pa.R.Crim.P. 579(A) and otherwise did not meet any of the timeliness exceptions. *Id.* at 13-14.

We review the trial court's decision on an untimely omnibus suppression motion for an abuse of discretion. *Commonwealth v. Micklos*, 672 A.2d 796, 802 (Pa. 1996). An abuse of discretion is not a mere error of judgment, but rather it exists where the judge acts manifestly unreasonably, misapplies the law, or acts with partiality, bias or ill will. *See id.* at 803.

The Rules of Criminal Procedure require defendants to file suppression issues within an omnibus pretrial motion. *See* Pa.R.Crim.P. 581(B). "The motion shall state specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof." Pa.R.Crim.P. 581(D). The defendant must file and serve the omnibus motion "within 30 days after arraignment, unless [(1)] opportunity therefor did not exist, [(2)] defendant or defense attorney . . . was not aware of the grounds for the motion, or [(3)] unless the time for filing has been extended by the court for cause shown." Pa.R.Crim.P. 579(A). Under Rule 581(B), if the defendant files an untimely suppression motion, "the issue of suppression of such evidence shall be deemed to be waived" unless the opportunity to raise such issue did not previously exist or the court excuses the defendant's tardiness in the "*interests of justice*." Pa.R.Crim.P. 581(B) (emphasis added); *cmt.* ("It should be noted that failure to file the motion within the appropriate time limit constitutes waiver of the right to suppress.").

The "interests of justice" test requires consideration of "the length and cause of the delay, the merits of the suppression claim, and the court's ability, considering the complexity of the issues and the availability of the witnesses, to hold the hearing promptly." **Commonwealth v. Brown**, 378 A.2d 1262, 1266 (Pa. Super. 1977). The trial court should invoke the "interests of justice" exception when "the merits of counsel's [untimely] motion [are] so apparent that justice require[s] that it be heard." **Commonwealth v. Hubbard**, 372 A.2d 687, 693 (Pa. 1977), **overruled on different grounds**, **Commonwealth v. Grant**, 813 A.2d 726, 738 (Pa. 2002).

Courts are unwilling to apply the "interests of justice" exception in the defendant's favor when he raises an untimely suppression issue whose merits are not apparent. **Hubbard**, 372 A.2d at 695 (where officers requested consent to inspect defendant's automobile and boots after short, informal questioning period in defendant's home in which officers twice advised defendant of his right to refuse consent, defendant's motion at murder trial to suppress evidence relating to automobile and boots on ground that he had not been advised of his fifth amendment rights before consenting to inspection did not raise apparently meritorious claim; thus, "interests of justice" did not require that such motion be heard). Courts are also reluctant to excuse untimely motions arguing issues that the defendant could have timely raised by the original due date. **Commonwealth v. Johonoson**, 844 A.2d 556, 561 (Pa. Super. 2004) (trial court properly denied defendant's supplemental suppression motion as untimely where defendant knew facts and

circumstances surrounding traffic stop at time of original suppression motion but limited original motion to different issue and did not file supplemental motion until four months later, after court had denied original motion); *compare Commonwealth v. Long*, 753 A.2d 272, 279-80 (Pa. Super. 2000) (trial court properly considered, in prosecution for driving under the influence, defendant's oral suppression motion presented at conclusion of Commonwealth's case, on ground that recently obtained videotape of traffic stop and arresting officer's trial testimony provided basis for the motion not available pretrial).

Here, based upon our review of the record, we are constrained to conclude that the trial court abused its discretion. It is undisputed that Appellee's omnibus suppression motion was untimely, as it was filed on February 1, 2019, more than thirty days after her September 21, 2018 arraignment. Differently put, Appellee had until Monday, October 22, 2018 to file a timely omnibus pretrial motion. In her untimely omnibus motion, Appellee asserted a single claim in support of suppression, that is that Officer Lucas lacked reasonable suspicion or probable cause to effectuate the traffic stop in question. Appellee neither explained the apparent untimeliness of the motion nor showed good cause for the lengthy delay. Instead, Appellee simply alleged, without more, that "[a]dditional discovery was provided most recently on or about January 17, 2019." Appellee, however, did not describe what the additional discovery entailed or whether it formed the basis for the omnibus suppression motion. The Commonwealth aptly notes that "the basis for the

traffic stop was known [to Appellee] at all relevant times," because the facts surrounding the traffic stop were set forth in the affidavit of probable cause accompanying the criminal complaint.[2]  Commonwealth's Brief at 18.

Despite the many shortcomings in Appellee's omnibus suppression motion, the trial court could nonetheless excuse the untimely filing in the interest of justice if the merits of the motion were apparent.  They were not.  Here, upon our review of Appellee's omnibus suppression motion, we conclude that, although she articulated the legal standards for challenging unlawful searches and seizures, Appellee did not allege sufficient facts specific to this case that would have rendered apparent the merits of the motion.  Accordingly, the trial court would not have had a basis for applying the "interest of justice" exception to the timeliness requirement of Rule 579(A) to excuse Appellee's untimely omnibus suppression motion.

Even if the omnibus suppression were timely, Appellee still would not be entitled to relief.  Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution protect the people from unreasonable searches and seizures.  ***Commonwealth v. Lyles***, 97 A.3d 298, 302 (Pa. 2014) (citation omitted).

_____

[2] We also agree with the Commonwealth's second issue on appeal pertaining to ***Tarbert***/***Blouse***.  The trial court erred in considering this issue at the March 1, 2019 hearing because Appellee failed to raise it in her omnibus pretrial suppression motion as required by Rule 581(B) and (D) and raised it for the first time at the March 1, 2019 hearing following the close of evidence.

Section 6308, relating to investigation by police officers, provides in relevant part:

> **(b) Authority of police officer.--**Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or **has reasonable suspicion** that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b) (emphasis added).

> Traffic stops based on a reasonable suspicion[,] either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b)[,] must serve a stated investigatory purpose.  In effect, the language of Section 6308(b)—"to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title"—is conceptually equivalent with the underlying purpose of a **Terry**[3] stop.  . . . Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation.

***Commonwealth v. Feczko***, 10 A.3d 1285, 1291 (Pa. Super. 2010) (citations omitted), ***appeal denied***, 25 A.3d 327 (Pa. 2011).

> [T]o determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered.  In making this determination, we must give due weight . . . to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience.  Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct.  Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

***Commonwealth v. Fulton***, 921 A.2d 1239, 1243 (Pa. Super. 2007), ***appeal denied***, 934 A.2d 72 (Pa. 2007) (citations, quotation marks and brackets

---

[3] ***Terry v. Ohio***, 392 U.S. 1 (1968).

omitted). If an objective view of the facts indicates an officer had specific, articulable facts that a traffic violation occurred, the law deems the stop reasonable. *Commonwealth v. Chase*, 960 A.2d 108, 114 (Pa. 2008).

Additionally, we observe that the forcible stop of a vehicle constitutes an investigative detention such that there must be reasonable suspicion that illegal activity is occurring. *Commonwealth v. Clinton*, 905 A.2d 1026, 1030 (Pa. Super. 2006), *appeal denied*, 934 A.2d 71 (Pa. 2007). Police are justified in stopping a vehicle when relying on information transmitted by a valid police bulletin. *In re D.M.*, 727 A.2d 556, 558 (Pa. 1999). Moreover, even where the officer who performs the stop does not have reasonable suspicion, the stop is nonetheless valid if the radio officer requesting the stop has reasonable suspicion. *Commonwealth v. Jackson*, 698 A.2d 571, 574 n.3 (Pa. 1997).

Instantly, based on the evidence detailed above, Officer Lucas had reasonable suspicion to effectuate the traffic stop at issue. First, he received a radio dispatch from Corporal Lawton indicating that Appellee failed to stop at a DUI checkpoint when asked to do so by several police officers in violation of Section 3102 of the vehicle code, which provides that "[n]o person shall willfully fail or refuse to comply with any lawful order or direction of . . . any uniformed police officer, sheriff or constable or, in an emergency, a railroad or street railway police officer[.]" 75 Pa.C.S.A. § 3102(1); *see Commonwealth v. Yong*, 177 A.3d 876, 889 (Pa. 2018) (noting that "an officer with the requisite level of suspicion may direct another officer to act in

his or her stead"); **Commonwealth v. Cruz**, 21 A.3d 1247, 1250 (Pa. Super. 2011) ("Police are justified in stopping a vehicle when relying on information transmitted by a valid police bulletin."). Second, within three to five minutes of the radio dispatch, he located a black sedan, similar to the one identified by Corporal Lawton, in vicinity of the checkpoint. Third, the license plate on the black sedan matched the first three letters provided to Officer Lucas over the radio dispatch. Finally, Appellee matched the description of the driver—a white female with longer hair. Accordingly, based on the totality of the circumstances in this case, we conclude that Officer Lucas at least had reasonable suspicion to stop Appellee's car.[4]

Thus, given the facts of this case, because Appellee's omnibus suppression motion, whose merits were not readily apparent, was untimely, the trial court abused its discretion in granting it. Moreover, even if the omnibus motion were timely, Appellant still would not obtain relief because, the facts, as alleged at the March 1, 2019 hearing, establish that Officer Lucas at least had reasonable suspicion to stop Appellee's car.[5]

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

_____

[4] We decline to address the Commonwealth's third issue separately as we addressed it in the context of its first issue.

[5] We note that Appellee did not file an appellate brief.

- 15 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>01/10/2020</u>